FOSTER–MILBURN CO. et al. v. KNIGHT, Chief Judge.

No. 21643.

United States Court of Appeals Second Circuit.

Argued April 12, 1950.

Decided May 3, 1950.

Richard J. Burke, New York City, for petitioners.

C. Ray Robinson, Merced, Cal., for respondent.

Before L. HAND, Chief Judge, SWAN and CHASE, Circuit Judges.

L. HAND, Chief Judge.

The defendants have filed a petition for a writ of mandamus or prohibition to prevent the transfer of an action, based upon diversity of citizenship, from the Western District of New York to the Southern District (Northern Division) of California. No order has yet been issued, but after hearing both parties upon a petition of the plaintiff the judge has filed an opinion, holding that § 1404(a) of the Judicial Code [1] authorizes the transfer because it will be for the convenience of witnesses; and concededly, he will enter the appropriate order, unless we decide otherwise. The defendants' petition raises two questions: our jurisdiction to issue a writ; and the district judge's jurisdiction to transfer the action.

We held in Magnetic Engineering & Manufacturing Co. v. Dings Manufacturing Company [2] that we would not entertain the petition of a plaintiff to review by mandamus an order transferring a "diversity" action to the district of the defendants' residence, but would leave the question for the court of appeals of the

---

1. § 1404 (a), Title 28 U.S.C.A.

2. 2 Cir., 178 F.2d 866.

circuit to which the action had been transferred. The district court had jurisdiction to transfer that action to the district of the defendants' residence, and the only question was whether its discretionary power should be reviewed *in limine* by the court of appeals of the circuit *a quo*, or by that of the circuit *ad quem*. We concluded that, since one of the most important determining factors was whether the plaintiff could review the error, if any, on appeal from a judgment against him, it was more appropriate for the court of appeals of the circuit *ad quem* to decide it than for us. However, we said that in such a situation the merits might "be so plain" that we "ought not to hesitate" to intervene, even though we were sure that the transfer could be reviewed on appeal. In the case at bar the question is whether the district court has any power to consider the question at all; if it has not, the transfer will be a nullity; for, as we shall show, the District Court for the Southern District (Northern Division) of California will have no jurisdiction over the defendants, and any judgment it may enter will be void.

■ True, it can be plausibly argued that the defendants can appeal from the order after it is entered. For example, if a court reopens a judgment after the time has passed within which it has power to do so, an appeal lies, although the order grants a new trial and is therefore interlocutory.[3] However, so far as we can learn, that doctrine has not been extended to appeals from other interlocutory orders, even when the only issue is of the district court's jurisdiction; and it may be that it should be confined to that specific situation in which it has been applied. Nevertheless, it will not be necessary to decide whether an appeal will lie from the order of the Western District of New York, because it will be easy for the defendants to avoid that question by both appealing and petitioning for a writ when the order is entered. All that we have to consider is whether in one guise or the other we shall have any power of review. If we are right in supposing that, should § 1404(a) not authorize the transfer, any judgment in the California court will be a nullity, there can be no doubt that the order will be reviewable on appeal from a judgment for the plaintiff, and there is no reason why we should not decide the point *in limine*.

■ Coming then to the merits, it is true that the District Court of the Southern District (Northern Division) of California would have jurisdiction over an action brought by the plaintiff against the defendants, provided he served them with process within that state, or, perhaps, that district.[4] Hence, the plaintiff argues, since he could have "brought" the action in California, § 1404(a) authorized its transfer thither. That would be true, if that section regards the mere filing of a complaint as a bringing of the action; but it is not true, if it presupposes that the defendant can be served. We do not forget that an action is "commenced" when the complaint is filed;[5] and it would follow, if it is "brought" whenever it is "commenced," that the plaintiff is right. The inference is, however, unwarranted that Rule 3 meant to assimilate the filing of a complaint to the service of a summons. Apparently its primary object was to fix a limit upon the period of limitation; and that has never required the service of process, but ordinarily only the lodgement of process in the hands of the sheriff, as it still does, for example, in New York.[6] We need not say that that is the only of-

**3.** Phillips v. Negley, 117 U.S. 665, 6 S.Ct. 901, 29 L.Ed. 1013; City of Manning v. German Ins. Co., 8 Cir., 107 F. 52, 54; Nelson v. Meehan, 9 Cir., 155 F. 1, 3; Hamilton Coal Co. v. Watts, 2 Cir., 232 F. 832; Greyerbiehl v. Hughes Electric Co., 8 Cir., 294 F. 802, 804; Board of Supervisors of Rockland County v. Knickerbocker, 2 Cir., 80 F.2d 248, 250; Gilmore v. United States, 8 Cir., 131 F.2d 873; Larsen v. Wright & Cobb Lighterage Co., 2 Cir., 167 F.2d 320, 322, 323.

**4.** Rule 4 (f), Rules of Civil Procedure, 28 U.S.C.A.; 28 U.S.C.A. § 1693.

**5.** Rule 3, Rules of Civil Procedure.

**6.** § 17, N. Y. Civil Practice Act.

952

fice of Rule 3, but we are satisfied that at least it does not make the filing of a complaint the equivalent of "bringing an action" under § 1404(a).

█ It is horn book law that transitory actions must begin with personal service upon the defendant and that, when they do not, the judgment is a nullity.[7] It is of course true that Congress might make the process of a district court run throughout the Union, as indeed it has done in suits by the United States under the Anti-Trust Acts.[8] But, unless otherwise specifically provided, the initial process in a transitory action has always been limited territorially; and Rule 4(f) now confines it to the boundaries of the state in which the action is pending. If, however, the plaintiff be right, § 1404(a) has made it possible in "diversity" cases for a plaintiff to dispense with service upon the defendant in the district where the case is to be tried; for by serving him in an action in the defendant's own district, the plaintiff may fetch him 2,000 to 3,000 miles away for trial in a district where he does not live and where he has never set foot. Considering that, this is contrary to the substantially uniform practice of Congress, and we ought to demand a plain expression of intent to so revolutionary a change.[9] Not only is there no such expression, but analysis of the results of such an interpretation make it to the last degree improbable that this could have been the purpose.

█ Section 1391(b) of the Judicial Code[10] covers all but "diversity" actions, among them those founded upon the Constitution or any law or treaty of the United States; and in all of these the plaintiff must sue in the district where the defendant resides and must serve him in the state. It is clear therefore, that in all such actions the plaintiff cannot transfer the suit to another district, no matter what may be the convenience of witnesses. We cannot conceive that, had Congress meant so to extend the scope of process *in personam* as will follow upon the plaintiff's position, it would have selected the "diversity" jurisdiction as the single exception, leaving claims founded upon federal rights—which surely must have been as important in the view of Congress—to be prosecuted only in the district of the defendant's residence. The explanation is reasonably plain why the venue of "diversity" actions should be in the district of the plaintiff's residence as well as in the defendant's. A resident plaintiff may always sue a non-resident in the state court, if he can catch him there; and it was one of the purposes of the "diversity" jurisdiction to make a federal court accessible to a non-resident so sued. Obviously that presupposes that the federal court of that state shall have jurisdiction over the action. Congress might, indeed, have left it to the defendant to remove the action after he had been sued; it need not have given the resident plaintiff the privilege of resorting to the federal court in the first instance. No doubt there may be instances when a non-resident defendant is content to go on in the state court; but it cannot be supposed that on any but the rarest occasions such a defendant will positively prefer the state court, and usually the plaintiff's privilege of beginning the action in the federal court will serve merely to avoid the formality of a removal. However that may be, it is patently untenable to suppose that the consequence of this added, and perhaps unnecessary, privilege, is to enable a resident plaintiff to serve process outside his state and bring a nonresident to trial outside his own district.

While there is as yet no controlling authority upon the point, what there is accords with our conclusion. The revisers say that § 1404(a) "was drafted in accordance with the doctrine of forum non conveniens," and that doctrine always "pre-

7. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565.

8. § 25, Title 15, U.S.C.A.

9. Robertson v. Railroad Labor Board, 268 U.S. 619, 627, 45 S.Ct. 621, 69 L.Ed. 1119.

10. § 1391 (b), Title 28, U.S.C.A.

supposes at least two forums in which the defendant is amenable to process."[11]   The same conclusion was expressed obiter in Christopher v. American News Co.,[12] and Judge Rodney so decided in Tivoli Realty Insurance Co. v. Paramount Pictures, D. C., 89 F.Supp. 278.[13]

We assume that it will not be necessary to issue any writ, but that the judge will enter an order, denying the plaintiff's petition; and, for that reason, we shall not enter any order at the present time, in the expectation that none will be necessary.

11. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055.

12. 7 Cir., 176 F.2d 11.

13. February 14, 1950, Dist. of Delaware.