**PARAMOUNT PICTURES, Inc. et al. v.
RODNEY, U. S. District Judge,
et al. (two cases).**

**INTERSTATE CIRCUIT, Inc. et al. v.
RODNEY, U. S. District Judge,
et al. (two cases).**

Nos. 10174–10177.

United States Court of Appeals
Third Circuit.

Argued June 7, 1950.

Reargued Oct. 3, 1950.

Decided Dec. 6, 1950.

As Amended Jan. 5, 1951.

Writ of Certiorari Denied March 26, 1951.
See 71 S.Ct. 572.

Hastie and McLaughlin, Circuit Judges, dissented.

See also, D.C., 10 F.R.D. 201.

Robert E. Sher, Washington, D. C., Roy W. McDonald, New York City (Hastings, Stockly, Walz & Wise, Wilmington, Del., Southerland, Berl & Potter, Wilmington, Del., Richards, Layton & Finger, Wilmington, Del., Morris, Steel, Nichols & Arsht, Wilmington, Del., Caleb S. Layton, Wilmington, Del., George S. Wright, and Jos. Irion Worsham, Dallas, Tex., on the brief), for petitioners.

Thurman Arnold, Washington, D. C. (Killoran & Van Brunt, Wilmington, Del., Arnold, Fortas & Porter, Washington, D. C., Thompson, Meek & Goldberg, Dallas, Tex., on the brief), for respondent.

Before BIGGS, Chief Judge, and MARIS, GOODRICH, McLAUGHLIN, KALODNER, STALEY and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

The question presented by the cases at bar is whether the United States District Court for the District of Delaware on a motion made by all of the defendants, opposed by the plaintiffs, has the *power* under Section 1404(a) of Title 28 United States Code Annotated, to transfer to an appropriate United States district court in Texas two suits[1] based on the antitrust laws of the United States. The trial court concluded that it lacked the authority to transfer the actions.[2] 89 F.Supp. 278. We disagree.

1. The two suits instituted in the court below are Tivoli Realty, Inc. v. Paramount Pictures, Inc., Civil Action No. 1077, and Adelman v. Paramount Pictures, Civil Action No. 1109. A description of the actions may be found in an opinion of the District Court, reported 80 F.Supp. 800.

2. It did not decide whether for the convenience of the parties, in the interest of justice, the cases should be transferred. The defendants filed petitions for mandamus in this court. We issued a rule to show cause. Answers were filed and the questions involved have been fully argued.

The defendants also perfected appeals as a precautionary measure in view of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L. Ed. 1528. A separate and *per curiam* opinion disposing of the appeals is filed concurrently with the opinion in the instant cases.

Section 1404(a) states that "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district * * * where it might have been brought." Section 12 of the Clayton Act, 15 U.S.C.A. § 22, provides that a suit under the antitrust laws against a corporation may be brought not only in the district of which it is an inhabitant but "also in any district wherein it may be found or transacts business", and that "all process in such cases may be served in the district of which [the corporation] is an inhabitant, or wherever it may be found." Cf. Section 4 of the Clayton Act, 15 U.S.C.A. § 15.

■ There are fourteen defendants, identical in each suit, in the Delaware actions. Ten were incorporated in Delaware; four, in New York. The trial court concluded that only nine defendants were transacting business in Texas and therefore venue could be laid in that State only as to them under Section 12 of the Clayton Act. It also found that five defendants were not inhabitants of Texas, could not be found and did not transact business there, and that " * * * the actions could not consequently have been originally brought against all of the defendants in any Dis-

trict Court in Texas."[3] The trial court interpreted Section 1404(a) in the light of the doctrine of *forum non conveniens* which prohibits the dismissal of a suit unless there is a more convenient forum where it may be recommenced and maintained,[4, 5, 6] and limiting the statute by the phrase "might have been brought", refused transfer.

■ In Neirbo Co. v. Bethlehem Shipbuilding Corporation, 308 U.S. 165, 167-168, 60 S.Ct. 153, 84 L.Ed. 167, it was held that the power of the federal courts to adjudicate controversies is granted by Congress and cannot be conferred by the consent of the parties, whereas the place where judicial authority is to be exercised relates only to the convenience of litigants and is subject to their disposition. A venue statute gives a "personal privilege" to a defendant which he may assert or waive at his election. Commercial Casualty Ins. Co. v. Consolidated Stone Co., 278 U.S. 177, 179, 49 S.Ct. 98, 73 L.Ed. 252. Moreover, the doctrine of *forum non conveniens* means no more than that a court may resist an imposition upon its jurisdiction even when that jurisdiction is authorized by a general venue statute. Gulf Oil Corp.

3. The trial court stated, "There is no question that all fourteen defendants are properly suable in this [Delaware] district", and concluded, as we have said, that five defendants did not transact business in Texas. See 89 F.Supp. at page 279. The court cited Mebco Realty Holding Co. v. Warner Bros. Pictures, Inc., D.C.N.J., 45 F.Supp. 340 and Westor Theatres, Inc. v. Warner Bros. Pictures, Inc., D.C.N.J., 41 F. Supp. 757. But compare Giusti v. Pyrotechnic Industries, 9 Cir., 156 F.2d 351. No reference was made to United States v. Scophony Corporation, 333 U. S. 795, 68 S.Ct. 855, 92 L.Ed. 1091. The complaints, defendants' affidavits and an affidavit filed by counsel for the plaintiffs seem to raise an issue of fact within the purview of the Scophony decision as to whether the five defendants referred to were transacting business in Texas. This issue could have been resolved only by the taking of oral testimony. Cf. Frederick Hart & Co. v. Recordgraph Corporation, 3 Cir., 169 F.2d 580. On the instant record there

would seem to be as much basis for a conclusion that the five defendants referred to were transacting business in Texas as for the conclusion that the four New York corporations were transacting business in Delaware. In the view that we take of the cases at bar it is unnecessary to determine this fact issue.

4. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506-507, 67 S.Ct. 839, 91 L.Ed. 1055.

5. The trial court treated the Reviser's Notes to Section 1404(a), appended to 28 U.S.C.A., as an authoritative interpretation, citing United States v. National City Lines, 337 U.S. 78, 81, 69 S.Ct. 955, 959, 93 L.Ed. 1226, but Title 28 is more than a mere codification. It is also a revision. Ex parte Collett, 337 U.S. 55, 56-72, 69 S.Ct. 944, 959, 93 L.Ed. 1207.

6. The provisions of Section 1404(a) are applicable to civil actions brought under the antitrust laws. United States v. National City Lines, n. 5, supra.

v. Gilbert, 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055.

 The suits in the District of Delaware are based, as we have said, on the antitrust laws. Jurisdiction to adjudicate such controversies was conferred on all United States district courts by Sections 41(8) and (23) of Title 28 U.S.C., 1940 ed., now covered into Section 1337 of revised Title 28 United States Code Annotated. Suits embracing the identical subject matter could have been brought and, literally, "might have been brought",[7] by the plaintiffs against the defendants in any district court in Texas. Moreover, if brought, the suits could have been maintained[8] unless there had been seasonable objection to the venue by the defendants, for service of process under Section 12 of the Clayton Act could have been made wherever the defendants could have been found. Even if the doctrine of *forum non conveniens* be applied under the precise conditions required by Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506-507, 67 S.Ct. 839, 91 L.Ed. 1055 (and Section 1404(a) was not then before the Supreme Court), those conditions are met by the instant circumstances: viz., the Texas court would have had the power to adjudicate the controversies and it would have had jurisdiction of all the defendants. By joining in the motion to transfer the defendants have waived any objection to Texas venue and have agreed to submit themselves to a Texas court. Therefore, suits embracing the same parties and the same subject matter could now be brought and maintained in Texas. Indeed they could have been brought in Texas on November 6, 1947 and March 29, 1948, the dates on which the actions were commenced in the District of Delaware, and could have been maintained in Texas if no objection had been timely made to the venue. The difference between the phrase "might have been brought" of Section 1404(a) and that employed in this opinion, "could now be brought", is no more than one of tense and grammar, the imperfect subjunctive as compared to the pluperfect subjunctive. Surely Congress did not intend the effect of an important remedial statute to turn upon tense or a rule of grammar.[9]

██ We do not put our decision on the ground advanced by Judge Ryan in Ferguson v. Ford Motor Company, D.C.S.D.N.Y., 89 F.Supp. 45.[10] Both Judge Ryan and

7. As to where a suit may be "brought" it may be argued that the terms "brought" and "commenced" are synonymous. "A suit is brought when in law it is commenced". Goldenberg v. Murphy, 108 U.S. 162, 163, 2 S.Ct. 388, 389, 27 L.Ed. 686. Rule 3, Fed.Rules Civ.Proc. 28 U.S.C.A. states only that "A civil action is commenced by filing a complaint with the court."

8. See and compare General Inv. Co. v. Lake Shore & M. S. Ry. Co., 260 U.S. 261, 272-278, 43 S.Ct. 106, 67 L.Ed. 244, where very similar issues were raised in a removal case.

9. In Jiffy Lubricator Co. v. Stewart-Warner Corporation, 4 Cir., 177 F.2d 360, 362, it was said that the congressional purpose in enacting Section 1404(a) was " * * * to grant broadly the power of transfer for the convenience of parties and witnesses, in the interest of justice, whether dismissal under the doctrine of forum non conveniens would have been appropriate or not." See also United States v. E. I. DuPont De Nemours & Co., D.C.D.C., 83 F.Supp. 233, 234.

10. The facts in the Ferguson case were very similar to those before the trial court in the pending Delaware actions, assuming *arguendo* that five of the corporate defendants do not transact business in Texas. In the Ferguson case, jurisdiction was also based on the antitrust laws, and the court held, in view of the consent of the defendants to be sued in Michigan, the transferee forum, that it was not necessary that " * * * venue in the transferee forum be proper as to every one of a number of defendants before transfer may be ordered." Judge Ryan went on to say, "Such a result [authorizing transfer] is possible, if the statutory condition is construed as requiring the transferee forum to be a proper venue as to at least one of the defendants in a multi-defendant case; in such a situation it can fairly be said that the action might have been brought there in a venue sense." See 89 F.Supp. at pages 48, 49. Cf. the disposition of the application for mandamus against Judge Ryan, sub nom. Ford Motor Co. v. Ryan, 2 Cir., 182 F.2d 329. Cf. McCarley v. Foster-Milburn Co., D.C.W. D.N.Y., 89 F.Supp. 643, and the disposi-

Judge Rodney seem to take the position that consent to venue is a nullity where Section 1404(a) is concerned. We think that consent is to be given the same effect under Section 1404(a) as it would receive under any other venue statute. We cannot suppose that Congress could have intended otherwise. Bear in mind that no problem of service of process is presented in connection with private civil antitrust suits for Section 12 of the Clayton Act, as we have indicated, authorizes service wherever a defendant may be found. Service of process has no connection with venue.

Finally and in conclusion on this issue we call attention to the provisions of Section 1406. Subsection (a) provides for transfer of a case in which venue has been laid in the wrong district to any district in which the suit could have been brought. We emphasize the provisions of subsection (b), however, which state that nothing in Chapter 87, the venue chapter of Title 28, "* * * shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue." If jurisdiction to adjudge the controversy between the parties be in the court in which suit is brought, no matter whether venue be properly laid in that district or not, the court will be deemed to have jurisdiction of the persons of the defendants and they will be treated as having submitted themselves to jurisdiction if there be no seasonable objection. We can conceive of no reason in view of the provisions of Section 1406 why candid-voiced *express consent* should not be deemed to be as potent an actor in the drama of venue as puling *no seasonable objection.*[11]

■ It has been urged that the District Court has power, irrespective of the defendants' consent, to transfer the Delaware suits to Texas. This is stated upon the broad ground that they "might have been brought" there in the sense that a district court in Texas has jurisdiction of the subject matter and therefore would accept the filing of a complaint in such a suit even though the suit might later fail if an objection to venue were made or if for any reason service upon the defendants could not be had. We neither accept nor reject this contention for we are not here called upon to delimit the extent of the power which Section 1404(a) has conferred upon the district courts. The defendants' consent is sufficient to support the transfer here. Accordingly the extent of the power of a district court to transfer a case under Section 1404(a) to a district to which the defendant does not consent

tion of the application for mandamus against Judge Knight, sub nom. Foster-Milburn Co. v. Knight, 2 Cir., 181 F.2d 949.

See also United States v. National City Lines, 337 U.S. 78, 69 S.Ct. 955, 959, 93 L.Ed. 1226, in which the issue was whether Section 1404(a) extended the doctrine of *forum non conveniens* to a civil antitrust suit brought by the United States. There was a stipulation by the defendants not to raise the venue issue in the transferee forum. The Supreme Court decided that the case might be transferred. Inferentially this supports Judge Ryan's position in Ferguson v. Ford Motor Company, supra. Judge Rodney, in considering the motion to transfer the actions with which we are presently concerned, pointed out that since United States v. National City Lines was a civil suit brought by the United States, Section 5 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 5, would have permitted the United States to

bring in additional parties and he treated Section 5 as a venue statute enlarging the scope of Section 12 of the Clayton Act, disagreeing with Judge Ryan's interpretation of the National City Lines decision. Though Section 5 is a venue statute no additional parties were sought to be brought in by the United States as defendants in the National City Lines suit and therefore in our opinion Judge Ryan was right on this aspect of the matter. We conclude, nonetheless, that the question presently before us was not in focus in the National City Lines case before the Supreme Court.

11. We have not referred to the decision of the Court of Appeals for the Fifth Circuit in Tivoli Realty Co. v. Interstate Circuit, 167 F.2d 155, reversing D.C., 75 F.Supp. 93, for the reason that it is irrelevant to the issues presented in the instant cases, Section 1404(a) not being in effect at the time of the decision, viz., on March 18, 1948.

we leave for later determination in cases which squarely present the issue. Cf. McCarley v. Foster-Milburn Co., D.C.W.D. N.Y., 89 F.Supp. 643, and the disposition of the application for mandamus against Judge Knight, *sub nom.* Foster-Milburn Co. v. Knight, 2 Cir., 181 F.2d 949.

 The order complained of is not appealable under Section 1291 or Section 1292, Title 28 United States Code Annotated. "The general rule is well settled that an order granting or refusing change of venue is not appealable unless expressly made so by statute." Jiffy Lubricator Co. v. Stewart-Warner Corporation, 4 Cir., 177 F.2d 360, 362. The order is interlocutory and there is here no "final disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it." Cohen v. Beneficial Industrial Loan Corp., 337 U. S. 541, 546-547, 69 S.Ct. 1221, 1226, 93 L. Ed. 1528. As was pointed out in Ford Motor Co. v. Ryan, 2 Cir., 182 F.2d 329, 330, the order would "* * * probably be incorrectible on appeal [after final judgment], for petitioners could hardly show that a different result would have been reached had the suit been transferred." The Delaware district court has refused to exercise its authority to determine issues of justice and convenience raised by Section 1404(a) when it is its duty to do so. Ex parte Republic of Peru, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014; Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185. The Delaware district court possesses the power to transfer the causes but has refused to exercise that power because it believes it does not possess it. Mandamus is the proper remedy. Cf. Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320. The writ is as appropriate to compel the exercise of discretion as it is to correct the abuse of discretion. Cf. Webster Eisenlohr, Inc., v. Kalodner, 3 Cir., 145 F.2d 316.

It will be necessary, therefore, for the district court to consider whether a transfer of the Delaware suits to an appropriate district in Texas will serve the convenience of the parties and witnesses and is in the interest of justice. The principles and conclusions expressed in this opinion will not give the defendants a right to choose their forum, a privilege heretofore exercised at least to some degree by plaintiffs. On the contrary our decision puts in the hands of an impartial federal tribunal the determination as to where the suits can best be tried.

We assume that it will not be necessary to issue the writ, unless application for *certiorari* be made, and that the court below will vacate the order refusing the transfer and will proceed to consider in the light of convenience of the parties and witnesses and in the interest of justice whether the causes should be transferred to a district court in Texas.

HASTIE, Circuit Judge, with whom McLAUGHLIN, Circuit Judge, joins (dissenting).

Judge McLaughlin and I think the district court correctly construed Section 1404 (a) of the new Judicial Code.

In that Section, Congress has said that in the interest of convenience and justice "a district court may transfer any civil action to any other district or division where it might have been brought". 28 U.S.C.A. § 1404(a). The district judge who is respondent here, acting upon a petition to transfer civil antitrust suits from the District of Delaware to the Northern District of Texas, had to decide whether the Northern District of Texas was a place where the suits "might have been brought". A reasonable and obvious way of determining this was to see whether Congress in some other statute had designated the places where litigation of this sort might be brought. Such an inquiry with reference to antitrust suits leads directly to the provision of Section 12 of the Clayton Act, which is Section 22 of Title 15 of the United States Code Annotated and will be so designated throughout this opinion. This section provides that "Any suit * * * under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district

wherein it may be found or transacts business * * *." To the learned district judge who had concluded that the Northern District of Texas met none of these requirements, it seemed that a reading of this section in conjunction with Section 1404(a) solved the problem. We can find no fault in this reasoning.

On the other hand, it seems to us that in rejecting Section 22 of Title 15 as definitive of the limits of power to transfer suits under Section 1404(a) this court is holding that the latter statute empowers a district court to transfer litigation to any district whatever if the court deems such action just and convenient. In brief, the court is holding that the concluding phrase of Section 1404(a) is surplusage.

Logically, the district where an action *in personam* "might have been brought" can mean a place of proper venue for the original proceeding, or a place where the defendant was amenable to the authority of the court,[1] or both. We are unable to find any other reasonable construction which would give the language substantial effect. The phrase under construction is treated as surplusage unless it is given one of the above suggested meanings. Apparently, the court believes that problem can be avoided here by reasoning that, even if venue does not lie in Texas, all of the defendants were amenable to the authority of the district court there. We think that conclusion is mistaken.

Both venue and personal jurisdiction over a defendant corporation in antitrust suits are properly approached through Section 22 of Title 15 which reads as follows:

"District in which to sue corporation.

"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

This section states as determinants of proper venue the normal criteria of personal jurisdiction over a corporation. For unless a corporation is "an inhabitant" of, or "found" in or "transacts business" in a state, it normally is not subject to original process of a district court for a district within that state.[2] The only relevant exception to this rule is the restricted authority for extraterritorial service of process contained in the concluding clause of Section 22. But we read that clause as restricting extraterritorial power to "such cases" as are within the requirement of the preceding provision of the Section that suit be brought where, at least, the corporation "transacts business".[3] We believe a corporation would be entitled to have extraterritorial service attempted under this Section quashed upon a showing that it did not transact business in the state from which summons had issued. Thus, whether "a district [where suit] might have been brought" is viewed precisely in terms of proper venue or more generally to include conceptions of power of a court to subject defendants to its authority, Section 22 incorporates the concept and in so doing excludes power to transfer to Texas in these cases.

In brief, Section 22 states the only meaningful limitations to which the concluding phrase of Section 1404(a) can refer. And once these limitations are rejected, as we think the court is rejecting them, a

---

1. Cf. Foster-Milburn Co. v. Knight, 2 Cir., 1950, 181 F.2d 949.

2. Such is the common law rule. Restatement, Conflict of Laws §§ 89, 92 (1934). This rule is given full effect by the limitations imposed upon the process of district courts by Rule 4(d) and (f) of the Federal Rules of Civil Procedure. Compare the decision of this court in Orange Theatre Corp. v. Rayherst Amusement Corp., 3 Cir., 1944, 139 F.2d 871.

3. A corporation may transact business within a state yet not be subject to process of a district court there. With the conception of transacting business stated in United States v. Scophony Corp., 1948, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091, contrast the more limited provision for service of process upon a corporation in Rule 4(d) (3), Federal Rules of Civil Procedure.

substantial provision of Section 1404(a) is left meaningless, or at least too vague for practical application.

Whatever merit there may be as a matter of policy, in the view implicit in the opinion of the court that a district court should be free to transfer cases according to justice and convenience without technical restrictions, we think Congress has not expressed or embodied that policy in Section 1404(a). If such had been the intention of Congress we think the concluding phrase of Section 1404 (a) would have been omitted. But that phrase was included and we should give it substantial effect according to its tenor.

We think this analysis suffices to sustain the position of the district judge. However, to the extent that reinforcing considerations may be useful, they are not lacking.

One familiar and often helpful aid to statutory construction is afforded by reference to similar statutory language of uncontroverted meaning used in some context which permits useful comparison. This approach is illuminating here.

Throughout Chapter 87, of which Section 1404(a) is a part, we find references to places where suits may be brought originally or to which suits may be transferred. It is not disputed that these sections are directions as to proper venue. They afford some support for the construction of similar language in Section 1404(a) as similarly limiting transfers to districts of proper venue. Particularly noteworthy is Section 1406(a) of Title 28 which authorizes a judge of a district in which a suit has been improperly brought to transfer the litigation to a district where it could have been brought. We think it will not be dis-

puted that under this section, the receiving forum must be a district of proper venue.[4] Here again, the analogy supports our analysis of 1404(a).

The reviser's notes concerning Section 1404(a) are also indicative of its proper construction.[5] Those notes state that "Subsection (a) was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper. As an example of the need of such a provision, see Baltimore & Ohio R. Co. v. Kepner, 1941, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28, which was prosecuted under the Federal Employer's Liability Act in New York, although the accident occurred and the employee resided in Ohio." 28 U.S. C.A. § 1404, Historical and Revision Notes.

In the light of this explanation it is significant that when these notes were written the technique of dismissing a suit because another forum was more convenient was employed only where the more convenient forum was also proper venue for the suit.[6] Moreover, the problem of Baltimore and Ohio Railroad Co. v. Kepner mentioned in the reviser's notes, was the lack of power to dismiss actions of particular type even if the forum was not convenient. This background suggests that proper venue in more than one forum is the limiting context of the Code revision and that within this context Section 1404(a) substitutes a broad power of transfer for a more restricted pre-existing power of dismissal. Plaintiffs are prevented from abusing their normal privilege of choice among districts of proper venue. At the same time, courts are directed to respect the legislative enumeration of places which Congress has deemed appropriate for the trial of various types of litigation.

4. Professor James W. Moore, special consultant on the revision of the Code, testified before the House Subcommittee holding hearings on the proposed Code that Section 1406 provides for transfer of the case "to the proper venue". 28 U.S.Code Congressional Service, 80th Cong., 2d Sess. (1948) p. 1969.

5. In Ex parte Collett, 1949, 337 U.S. 55, 69 S.Ct. 944, 959, 93 L.Ed. 1207 where

the meaning of this very section was in question, the Supreme Court emphasized the value of the reviser's notes as an aid to proper construction.

6. Gulf Oil Corp. v. Gilbert, 1946, 330 U. S. 501, 506–507, 67 S.Ct. 839, 91 L.Ed. 1055; Tivoli Realty, Inc., v. Interstate Circuit, Inc., 5 Cir., 1948, 167 F.2d 155, 156, certiorari denied 1948, 334 U.S. 837, 68 S.Ct. 1494, 92 L.Ed. 1762.

We are not unmindful of the contention, a principal support of the position of our brethren, that the existence of judicial power to adjudicate a controversy in a place of improper venue unless the defendant shall object[7] is a basis of power to transfer to a place of improper venue, the defendant willing. But we do not see how the conduct of a defendant after suit has been instituted can add to the forums where "it might have been brought". In the normal meaning of words this language of Section 1404(a) directs the attention of the judge who is considering a transfer to the situation which existed when suit was instituted. Certainly it would not be argued that by beginning business in Texas after suit was filed in Delaware, the present defendants could have made Texas a place where the present suits "might have been brought". We do not see how present tender to waive objection to venue in Texas can have any greater effect. We think the language of Section 1404(a) of Title 28, takes on precise meaning in the light of Section 22 of Title 15, so that there is neither warrant nor occasion for enlargement dependent upon the conduct of the parties during the course of a lawsuit.

Finally, it has been argued at bar that even assuming Section 22 of Title 15 is controlling, the Northern District of Texas is a place where all of the defendants are to be "found" or "transact business" and, therefore, that these suits might have been brought there. But on the record, the district court concluded and made an explicit finding that certain of the defendants were neither to be found nor transacting business in Texas. We are asked to examine and set aside this finding if we should conclude that the district court correctly construed the language of Section 1404(a).

Our construction of the statute brings us to the consideration of the issue thus raised. However, the construction which

has prevailed in these cases makes it unnecessary for the majority of the court even to consider this point, although the opinion of the court suggests that it may have merit. Since the point is not decided, we state our position on it summarily.

We think review of the finding in question is neither required nor proper in this proceeding. We are acting on a petition for writ of mandamus. Once it has been concluded that the district court was correct in its construction of Section 1404(a), we have gone as far as is appropriate in acting upon the present petition.

Other considerations aside, these cases present special circumstances which should cause us to refuse to employ the discretionary writ of mandamus to review the finding that certain defendants were not transacting business in Texas. It is not contended that the district judge acted arbitrarily in making such a finding but rather that he was mistaken in a conclusion of interrelated fact and law. And though petitioners now complain of that finding, each of them whose relation to Texas is in question signed and filed in the District Court for the Northern District of Texas as one of the papers in support of an action to stay one of the present Delaware actions a statement conceding: "That it had not transacted and is not transacting business in Texas; that it has no agent, representative or employee in Texas; that it cannot be found in Texas; that it is not domiciled in Texas and is not subject to the venue of a Federal District court or any court in Texas."[8] We find it impossible to be impressed by their plea now that they were so wrong then that we should use a discretionary writ to reverse a judge who in the exercise of his best judgment has agreed with them.

For these reasons, we would deny the writ.

---

7. Neirbo Co. v. Bethlehem Shipbuilding Corp., 1939, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167; 28 U.S.C.A. § 1406(b).

8. Relying in large measure upon this absence of relationship between these defendants and Texas, the Court of Appeals for the Fifth Circuit concluded that it would not be proper to restrain parties from proceeding with the Delaware litigation which is now before us. Tivoli Realty, Inc., v. Interstate Circuit, Inc., supra, note 6.