**LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**Marcus BATTEAST, a minor, by his parents and next friends, James BATTEAST and Shirley Batteast, and James Batteast and Shirley Batteast, individually, Wyeth Laboratories Incorporated, a corporation, and American Home Products Corporation, a corporation, Defendants.**

**No. 85 C 1486.**

United States District Court,
N.D. Illinois, E.D.

Nov. 7, 1986.

William G. Beatty, Johnson, Cusack & Bell, Ltd., Chicago, Ill., for plaintiff/counter-defendant Liberty Mut. Ins. Co.

Sara J. Gourley, Robert A. Downing, Eugene A. Schoon, Sidley & Austin, Chicago, Ill., for defendants/counter-plaintiffs Wyeth Laboratories, Inc. and American Home Products Corp.

Robert A. Holstein, Holstein, Mack & Associates, Chicago, Ill., for defendants Marcus Batteast, James Batteast and Shirley Batteast.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

This case is a declaratory judgment action by an insurance company against two of its insureds and certain other defendants. The plaintiff, Liberty Mutual Insurance Company ("Liberty"), is a Massachusetts corporation with its principal place of business in Boston, Massachusetts. Liberty's two defendant insureds are American Home Products Corporation ("American Home") and Wyeth Laboratories Incorporated ("Wyeth"). American Home is a Delaware corporation with its principal place of business in New York, New York. Wyeth is a New York corporation with its principal place of business in Radnor, Pennsylvania. The other remaining defendants are Marcus Batteast, a minor, and Marcus' parents, James and Shirley Batteast. Because the Batteasts' interests in this case are for all practical purposes the same, they will collectively be referred to as "the Batteasts."[1]

On June 29, 1984, the Batteasts were awarded a judgment against American Home and Wyeth in the amount of $22,285,000. The judgment was entered in a case brought by the Batteasts in the Circuit Court of Cook County, Illinois. *Batteast v. Wyeth Laboratories, Inc.*, No. 77 L 12460 (consolidated with case No. 80 L 16808). The judgment was later reduced by $910,000 to account for settlements received by the Batteasts from other alleged tortfeasors including St. Bernard's Hospital. The *Batteast* case is currently on appeal in the Illinois state courts.

In this case, Liberty seeks a declaration of its rights and obligations vis-a-vis its insureds, American Home and Wyeth. Specifically, in Count I, Liberty alleges: (1) that it is not obligated to pay any interest on the *Batteast* judgment that accrued after September 10, 1984; (2) that any interest it is obligated to pay is only on that portion of the judgment within the remaining aggregate limits of the subject policies issued to American Home and Wyeth; (3) that Liberty has no obligation to pay interest on any part of the $13,000,000 punitive damages award; and (4) that Liberty's duty and obligation to defend American Home and Wyeth ceased when Liberty constructively tendered the remaining aggregate limits of the subject policies to the Batteasts.[2] In Count II, Liberty alleges that by virtue of the same constructive tender of payment to the Batteasts, its duty and obligation to defend American Home and Wyeth in twenty-three other pending claims also ceased. Liberty seeks a declaration that it has no obligation to continue to defend American Home and

1. The two other original defendants, St. Bernard's Hospital and The Home Insurance Company, were dismissed on September 17, 1986, without objection from Liberty. Neither St. Bernard's, nor Home Insurance, was served with a summons and complaint as required by Federal Rule 4.

2. Liberty alleges that the terms of the subject insurance policies provide that Liberty's obligations terminate once it has tendered the remaining aggregate limits of the policies to the tort claimant. Liberty further alleges that it notified its insureds that it was prepared to make such a tender to the Batteasts, and that at the request of its insureds, it refrained from actually making the tender. The Complaint also alleges that Liberty and its insureds entered into an agreement providing that Liberty's "proposal would be treated and considered by its insured as though a tender had actually been made, without the necessity of actual tender of policy proceeds or interest." (Amended Complaint at ¶ 13).

Wyeth with regard to other claims falling within the July 1, 1975, to July 1, 1976, policy period.

American Home and Wyeth have filed a two-count counterclaim against Liberty. In Count I, they claim a right to reimbursement for the $26,813 premium they paid to secure a $25 million supersedeas bond. The bond was a condition precedent to an appeal from the judgment entered by the Illinois trial court. In Count II, they seek a declaration that Liberty is liable for legal fees and expenses which they incurred as a result of retaining additional counsel to assist in the post-trial and appellate proceedings in the *Batteast* suit.

Pending before the Court are two motions by American Home and Wyeth: a motion pursuant to Federal Rule of Civil Procedure 21 to dismiss the Batteasts from the case and a motion pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Southern District of New York.[3] As set out below, the Court grants both motions.

## II. MOTION TO DISMISS THE BATTEASTS

American Home and Wyeth assert in their motion to dismiss that the Batteasts are not proper defendants in this declaratory action since the Batteasts' interests cannot be adversely affected by a resolution of the disputes between Liberty and its insureds. In response, Liberty argues that at the very least the Batteasts are proper parties under Rule 19(a), if not necessary parties under Rule 19(b). The Batteasts themselves have never responded to either the motion to dismiss or the motion to transfer.

The case presents the rather unusual situation of defendants moving for the dismissal of co-defendants when there is no pending controversy between them. The Federal Rules do provide for this situation in Rule 21—Misjoinder and Non-Joinder of Parties:

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion *of any party* or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

(Emphasis added). Although Liberty questions the motives of American Home and Wyeth in seeking the dismissal of co-defendants, Liberty does not raise any procedural arguments against the propriety of the motion. Rather, Liberty makes a number of substantive arguments against the motion which the Court addresses, in turn, below.

### A. LIBERTY'S DEFENSE OF THE BATTEASTS' RIGHTS

Liberty argues in its response to the motion to dismiss that the Batteasts' absence from the case "may impede or impair their ability to protect their interest." (Br. filed 8/9/85 at 2). The Batteasts' asserted "interest" is in who pays the $22 million judgment (plus interest) if that judgment is ultimately upheld on appeal—Liberty or its insureds? Liberty argues that because this declaratory action may in fact determine from whom the Batteasts receive satisfaction of their judgment, the Batteasts "right to participate in the resolution of these issues should not be impeded." *Id.* at 3. Liberty goes on to state that "[t]he attorney for the Batteasts has seen fit to file his appearance on their behalf in this declaratory judgment action and has not sought their dismissal as parties to this case." *Id.* Although Liberty is correct that counsel for the Batteasts has not sought their dismissal, it is also a fact that he has made no objection to their possible dismissal.

This action was originally filed in the Circuit Court of Cook County. American Home and Wyeth filed a timely motion to remove the case to this Court asserting diversity of citizenship as the basis for

---

**3.** Also pending is Liberty's motion for partial summary judgment. On October 8, 1985, the Court stayed action on Liberty's motion until the motions to dismiss and to transfer were resolved.

subject matter jurisdiction. The removal was accomplished on February 21, 1985. During the time the case was pending in state court, Robert A. Holstein of Holstein, Mack & Associates filed a general appearance on behalf of the Batteasts. Mr. Holstein was the Batteasts' trial counsel in the state court tort action. To the Court's knowledge, other than filing his appearance form in state court, Mr. Holstein has had absolutely no involvement in this case. No appearance form has been filed in this Court on behalf of the Batteasts. To the Court's knowledge, no attorney has appeared in this Court on their behalf at status hearings or at hearings on motions. No answers to the complaint or amended complaint have been filed on behalf of the Batteasts. And, even though the question of the Batteasts' continued presence in this suit is before the Court, no briefs have been filed setting forth the Batteasts' position.[4]

The conduct of the Batteasts' counsel, or rather the lack of it, has led the Court to conclude that their counsel does not believe that the Batteasts' interests could be adversely affected by a decision in this action. Because Mr. Holstein is in the best position to understand and protect his clients' interests, the Court will not "second guess" his conclusion. Mr. Holstein's conclusion seems sound since his clients are fully protected by the existence of a $25 million supersedeas bond purchased by American Home and Wyeth. Regardless of the outcome of the declaratory action, the Batteasts can proceed directly against the bond should they win the appeal of the judgment. Therefore, the Court rejects Liberty's argument that the *Batteasts'* interests will be imperiled if they are dismissed from this case.

## B. LIBERTY'S DEFENSE OF ITS RIGHTS

The only substantive allegation in the Amended Complaint with respect to the

Batteasts is found in paragraph 11. The relevant allegation in that paragraph is as follows:

> [a]ll of said parties [including the Batteasts], as well as THE HOME INSURANCE COMPANY, which is another excess insurer of WYETH and AHP, have been joined as parties Defendant in this Declaratory Judgment action so as to be bound by any judgments, adjudications, or determinations made by the Court herein.

There are no allegations that Liberty and the Batteasts are engaged in an actual controversy, and no specific relief is sought against the Batteasts.

The cases cited by Liberty in its brief do not support Liberty's contention that it is the Batteasts' interests that must be protected. Rather, the cases are premised on the desirability to the insurer of avoiding inconsistent and even completely contradictory judgments.[5] *See, Maryland Casualty Company v. Pacific Coal & Oil Company,* 312 U.S. 270, 274, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941), and *Williams v. Madison County Mutual Automobile Insurance Company,* 40 Ill.2d 404, 407, 240 N.E.2d 602, 604 (1968).

Prejudice to Liberty is possible only if *all* of the following events take place: (1) Liberty prevails against American Home and Wyeth in this action; (2) American Home and Wyeth lose their appeal of the Batteast judgment; and (3) the Batteasts sue Liberty to collect their judgment and accrued interest. Assuming *arguendo* that all three conditions are met *and* that the Batteasts have a viable direct cause of action against Liberty, then Liberty would have to retry the issues present in this case in a second forum. The retrial would be necessary since the Batteasts, as nonparties to the declaratory action, would not be bound by its result.

---

4. Mr. Holstein has been served with copies of all motions and briefs by the other parties.

5. In its response brief, Liberty does not argue that its own interests would be at risk were the

Batteasts to be dismissed. However, because the cases cited by Liberty are premised on protecting the insurer, the Court will address this point.

The Court rejects the conclusion suggested by this analysis for three separate and distinct reasons. First, the Batteasts are protected to the extent of $25 million by the supersedeas bond purchased by American Home and Wyeth. Thus, it is unlikely that they will ever have difficulty collecting their judgment if it is affirmed on appeal. Second, American Home and Wyeth are large corporations with a net worth in excess of one billion dollars. It is unlikely that the Batteasts would pursue a dubious direct action against Liberty when they could use the collateral estoppel effects of this suit in a later suit against American Home and Wyeth. In any event, American Home and Wyeth will always be primarily liable because they were the entities against whom judgment was entered. Third, the claim that Liberty is at risk rings hollow in light of the fact that during the 19 month pendency of this case Liberty has never moved for a default judgment against the Batteasts thereby assuring that they would be bound by the final judgment.

Liberty has not cited to any cases with analogous factual situations. It has cited to a number of cases, including *Williams* and *Maryland Casualty, supra,* that hold that a tort claimant is a proper party to a declaratory action designed to establish whether *any* insurance coverage exists. Because the typical tortfeasor is a viable defendant only if he or she has insurance coverage, the failure to bind the tort claimant to the declaratory judgment would almost certainly lead to a later challenge by the successful tort claimant. With a judgment in hand, the tort claimant will pursue the "deep-pocket" insurance carrier.

In the instant case there is no scarcity of deep pockets and, as explained above, the possibility of Liberty becoming a target of the Batteasts is remote at best. None of the other cases cited by Liberty support its arguments.

## C. CONCLUSION

■■■ Because all of Liberty's arguments in opposition to the motion to dismiss the Batteasts are belied by Liberty's conduct and by the Batteasts' conduct, the Court is forced to conclude that the Batteasts were named as defendants in this case solely in an attempt to prevent a transfer of venue to another more appropriate jurisdiction. Particularly telling are the failures of Liberty and the Batteasts' respective counsel to take the ordinary affirmative litigation steps that would most effectively protect the interests that Liberty claims are paramount in this case.[6]

This Court holds that Rule 21 gives district courts the power to dismiss improperly named defendants to prevent the manipulation of the venue provisions of the Judicial Code in an attempt to defeat the ends of justice. The existence of this power has been recognized by at least one other court, albeit in dicta. *See, Tivoli Realty, Inc. v. Paramount Pictures, Inc.,* 89 F.Supp. 278, 282 (D.C.Del.1950), *mandamus denied,* 186 F.2d 111 (3rd Cir.1950), *appeal dismissed,* 186 F.2d 120 (3rd Cir.1950), *certiorari denied,* 340 U.S. 953, 71 S.Ct. 572, 95 L.Ed. 687 (1951). For the reasons stated above, this is an appropriate case for the application of Rule 21's mandate. Accordingly, American Home and Wyeth's motion to dismiss the Batteast defendants from this case is granted.

## III. MOTION TO TRANSFER

American Home and Wyeth have moved pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Southern District of New York. Because the Batteasts are apparently not subject to personal jurisdiction in the state of New York, all parties recognize that the motion to transfer is viable only if the Batteasts are first dismissed from this case. The Court has dismissed the Batteasts (*see* part II of this opinion), thus, the motion to dismiss is viable and its propriety must be judged in light of the Section

---

6. The most significant omissions are Liberty's failure to seek a default judgment against the Batteasts for their failure to answer the com-

plaints, and the Batteasts' failure to participate to any degree in this case, including failing to respond to the motion to dismiss.

1404(a) standard as it applies to the remaining parties. *In re Fine Paper Antitrust Litigation,* 685 F.2d 810, 819 (3rd Cir. 1982), *certiorari denied,* 459 U.S. 1156, 103 S.Ct. 801, 74 L.Ed.2d 1003 (1983).

Under Section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." [7] Although these factors are exclusive, they "are best viewed as placeholders for a broader set of considerations, the contours of which turn upon the particular facts of each case." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219, n. 3 (7th Cir.1986). American Home and Wyeth have the burden of establishing "that the transferee forum is clearly more convenient." *Id.* at 219–20. They have met that burden.

### A.  CONVENIENCE OF PARTIES

American Home has its principal place of business in New York City. Wyeth is a New York corporation. Liberty, a Boston company, has an office in New York City which, according to the uncontradicted affidavit submitted by the movants (Hagan affidavit), was responsible for the negotiation of the relevant policies of insurance. Clearly, New York City would be a more convenient forum for the movants. Liberty, for its part, does not argue that New York would be a less convenient forum for the parties. Thus, the convenience of the parties factor supports a transfer.

### B.  CONVENIENCE OF WITNESSES

In the Hagan affidavit, American Home and Wyeth argue that the relevant witnesses are located within the subpoena power of the District Court for the Southern District of New York. In response, Liberty argues that this case will involve the construction of insurance contracts and not the determination of factual disputes. At this point in time the Court cannot say which

side is correct as to the exact nature of the questions this case presents for resolution. Liberty has not, however, suggested that there are *any* potential witnesses located within Illinois. The Court concludes, that to the extent testimony will be required, it will necessarily be from either New York or Massachusetts residents and that there are no potential witnesses located within the subpoena power of this Court. Hence, the convenience of witnesses factor also supports a transfer.

### C.  INTEREST OF JUSTICE

There is a case presently pending in the Southern District of New York which involves American Home, Wyeth, Liberty and The Home Insurance Company ("Home Insurance"). *The Home Insurance Company v. American Home Products,* No. 85 C 5206. Home Insurance is a second layer excess insurer of American Home and Wyeth for the policy period in question. Home Insurance brought a declaratory action against its insureds in New York state court and later amended its complaint to add Liberty as a defendant. After being brought into the New York action, Liberty removed the case to federal court where it is presently located.

There is no question that the New York case will entail the interpretation of the Liberty insurance policy at issue in the instant case. Home Insurance's excess policy is a "following form" policy that adopts provisions of the underlying Liberty policies. Thus, the interpretation given to the Liberty policies directly affects Home Insurance's obligations to its insureds.

Liberty argues that the scope of the New York case is much broader than the instant case, and that were this case to be transferred to New York and the two cases consolidated, the instant case would be subsumed within the much larger New York litigation. The Court does not accept Liberty's assessment of the relative scope of the two cases. The instant case is designed to re-

---

7. With the dismissal of the misjoined (the Batteasts) and unserved (St. Bernard's Hospital) Illinois defendants, this case has become one which might have been brought in the Southern District of New York.

solve, once and for all, the rights and obligations of Liberty and its insureds with respect to the subject insurance policies. The New York litigation is designed to resolve, in a similarly conclusive manner, the rights and obligations of Home Insurance and the same two insureds with respect to Home Insurance's policy. The New York case is essentially identical in breadth and nature to the instant case.

More importantly, however, it would be a waste of the parties' and the Court's resources if an attempt was made to resolve the two disputes separately. As noted above, the Liberty and Home Insurance policies are interrelated. Both companies' policies are part of a comprehensive scheme of insurance coverage purchased by American Home and Wyeth. To a large extent, Home Insurance and any other excess carriers' obligations depend both on the legal interpretation of Liberty's policies and on the manner in which Liberty carried out its obligations to its insureds. The absence of Home Insurance from the instant case would render a resolution of the Liberty versus American Home/Wyeth dispute meaningless because, as a non-party, Home Insurance would not be bound by the result. Although Liberty now claims that Home Insurance was originally named as a defendant in this case "merely" to put them on notice as to the existence of this action, the more plausible explanation is that Liberty knew the importance of resolving the entire dispute in one forum. For reasons unfathomable to the Court, Liberty now appears to desire a piece-meal adjudication of American Home and Wyeth's insurance coverage problems. The Court is hesitant to conclude that the delay inherent in piece-meal adjudication is Liberty's actual goal, but does acknowledge that distressing possibility.

It is undisputed that there is a case pending in the Southern District of New York which will require the interpretation of the insurance policies at issue in the instant case. It is also undisputed that New York substantive law governs the interpretation of Liberty's policies and of the later "constructive tender" agreement between Liberty and its insureds. It is also undisputed that Liberty, American Home, Wyeth and Home Insurance are all presently party to the New York case. Additionally, Liberty has failed to articulate any meaningful connection that this case has with the state of Illinois. The plaintiff's right to choose its forum "has minimal value where none of the conduct complained of occured in the forum selected by the plaintiff." *Chicago, Rock Island and Pacific Railroad Company v. Igoe*, 220 F.2d 299, 304 (7th Cir.1955) (quoting from *Josephson v. McGuire*, 121 F.Supp. 83, 84 (D.C.Mass.1954). Although it is true that the *Batteast* judgment may have triggered both lawsuits, that it occurred in Illinois was purest happenstance. The actual triggering event, the alleged exhaustion of Liberty's aggregate policy limits, could have been caused by a judgment entered in any state.

For all of the reasons set forth above, it is clear that a transfer of this case to the Southern District of New York would best serve the interest of justice.

## D. CONCLUSION

▉ The Court finds that all three § 1404(a) factors weigh heavily in favor of transfer and that the Southern District of New York would clearly be a more convenient forum for this action. Although Liberty is correct that the plaintiff's choice of forum is entitled to great weight, that choice must give way to the more important concerns articulated by Congress in § 1404(a). Accordingly, American Home and Wyeth's motion to transfer this case is granted. The Clerk of Court is ordered pursuant to Local General Rule 30 to transmit this case to the Southern District of New York forthwith.