Francis SCHERTENLEIB,
Plaintiff-Appellant,

v.

Jerome S. TRAUM, Defendant-Appellee.

No. 7, Docket 78–7049.

United States Court of Appeals,
Second Circuit.

Argued Oct. 23, 1978.

Decided Dec. 15, 1978.

Franz S. Leichter, New York City (Wachtell, Manheim & Grouf, New York City, of counsel), for plaintiff-appellant.

E. Roger Frisch, New York City (Walsh & Frisch, New York City, Richard M. Auerbach, New York City, of counsel), for defendant-appellee.

Before FEINBERG and MULLIGAN, Circuit Judges, and PRATT, District Judge.*

---

* Hon. George C. Pratt, District Judge of the Eastern District of New York, sitting by designation.

1. The Wall Street Fund Limited, a Bahamian corporation; The Dollar Fund Limited, a Canadian corporation; The Fund of New York Lim-

FEINBERG, Circuit Judge:

Plaintiff Francis Schertenleib, a Swiss attorney and former judge, appeals from an order of the United States District Court for the Southern District of New York, Charles M. Metzner, J., dismissing one count of appellant's diversity action against Jerome S. Traum, a New York attorney, for failure to state a claim, and the three others on the ground of forum non conveniens. In the latter ruling, the judge relied upon defendant's consent to jurisdiction in Geneva, Switzerland, a forum where, we are told, appellant could not otherwise sue defendant. Appellant claims that this was an impermissible use of the forum non conveniens doctrine. We do not agree, and for reasons set forth below, we affirm the order of the district court with a minor modification.

I

This litigation arises out of a bitter controversy over events that took place in Geneva, Switzerland. In brief summary, the complaint alleged as background that Traum and one Jean d'Hennery (apparently a resident of West Germany) jointly controlled several foreign mutual funds and their management company;[1] that investors in the funds retained Schertenleib as an attorney to press claims against the funds and the management company; that Schertenleib, on behalf of his clients, filed a criminal complaint in Geneva in 1972 or 1973 against executives of the funds and management company (but not Traum); that Traum and d'Hennery, by promising Schertenleib to redeem the shares of investors in the funds, persuaded him to induce the Attorney General of Geneva to halt the criminal proceeding; that the redemptions were not made; and that Traum and d'Hennery improperly transferred assets from some of the funds to another, wasted

ited, a Bahamian corporation; Realstock Real Estate Stock Fund N.V., a Netherlands Antilles corporation; and Investors Capital Trust, Inc., the management company, organized under the laws of various countries, including Switzerland and Panama.

fund assets and otherwise harmed the funds. It also appears from the papers before us that these differences were temporarily settled in 1973, when, as mentioned, Schertenleib agreed to persuade the authorities to drop the criminal complaint that had been filed, and when Schertenleib was simultaneously retained by the Wall Street Fund as a lawyer in connection with the sale by the Fund of a Swiss bank, Banque Exel, as well as some other Swiss matters.

The complaint also alleged that later, in order to prevent Schertenleib from disclosing the alleged wrongdoing, Traum and d'Hennery conspired to, and did, file false criminal charges against Schertenleib in October 1976 with the Attorney General of Geneva;[2] that in early 1977, Traum falsely testified at a preliminary hearing in Geneva that Schertenleib was a swindler and a faithless attorney, that he had threatened d'Hennery in order to coerce the Wall Street Fund into the agreement in 1973, that Schertenleib extorted excessive legal fees by threatening to pursue the criminal complaint against the funds, which had been halted, and that he had acted with criminal intent. Still according to the complaint, this false testimony by Traum brought about Schertenleib's arrest and imprisonment in March 1977, which continued to the filing of the complaint in September 1977, while the Attorney General of Geneva investigated the charges.[3]

Based upon these allegations, Schertenleib's complaint against Traum seeks dam-

ages upon the following theories: (1) violation of section 487 of the New York State Judiciary Law;[4] (2) abuse of the process of the court and the Attorney General in Geneva, Switzerland; (3) prima facie tort, arising out of Traum's allegedly false testimony in Geneva; and (4) defamation, based on the same testimony.

It hardly needs saying that Traum denies any wrongdoing and asserts that the testimony he gave in Geneva is true. According to Traum, after Schertenleib misappropriated about three million Swiss francs, generated by the sale of Banque Exel, belonging to Wall Street Fund and its affiliates, Traum consulted an eminent Geneva law firm which recommended that the Fund institute criminal proceedings against Schertenleib and an alleged co-conspirator, Claude Kohler, also a Swiss resident. Such charges were filed in October 1976, and under Swiss procedure, were followed by judicial inquiry. Geneva judges heard several witnesses, including Traum, who on January 31 and February 1, 1977 testified orally in English, while a court reporter simultaneously translated into French. A judge then dictated minutes of the testimony which were transcribed in French; Traum later signed the French minutes, the only written record of his testimony. This testimony is the basis of the lawsuit against Traum now before us. In March 1977, the Geneva court had Schertenleib arrested, and he and Kohler have since been charged ("inculpe") with four serious crimes.[5] Dur-

---

**2.** According to the complaint, the charges were filed in the names of d'Hennery and the Wall Street Fund.

**3.** Despite at least two attempts to obtain release on bail from a higher court, Schertenleib is apparently still in prison pending completion of the investigation.

**4.** An attorney or counselor who:

    1. Is guilty of any deceit or collusion . . . with intent to deceive the court or any party . . . [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages to be recovered in a civil action.

**5.** (1) Disloyal management, based, inter alia, on Schertenleib's allegedly unauthorized and allegedly overly generous settlement with the purchasers of Banque Exel in his capacity as representative of the Wall Street Fund's interests;

    (2) qualified breach of trust, based on the failure to account for the three million Swiss francs belonging to the Wall Street Fund that came into Schertenleib's control;

    (3) extortion, based, inter alia, on a legal fee of 750,000 Swiss francs obtained from d'Hennery allegedly in exchange for dropping the criminal complaint against the latter and others;

    (4) forgery, based, inter alia, upon a false receipt obtained from his alleged co-conspirator Kohler, for one million Swiss francs,

ing the continuing investigation, Traum was extensively cross-examined in Geneva by Schertenleib and Kohler and their attorneys through the judge, in accordance with Swiss procedure.

In September 1977, plaintiff Schertenleib brought this action against defendant Traum in the United States District Court for the Southern District of New York. Plaintiff has also been active in other forums. He has filed complaints for "calumny" against two of the Geneva lawyers who drafted the criminal complaint against him on behalf of Wall Street Fund and d'Hennery, has brought charges before the Geneva Bar Association against another prominent Swiss criminal lawyer, and has filed criminal complaints in Geneva against defendant, d'Hennery and Mme. Szwerbrot, principal accountant for the Wall Street Fund, who also testified against plaintiff. This last complaint against defendant was dismissed for insufficiency by a Swiss judge in January 1978, but plaintiff has appealed in the Swiss courts from that dismissal.

After plaintiff's complaint was filed in the Southern District, defendant moved to dismiss all four causes of action for failure to state a claim upon which relief can be granted and three of the four causes of action on the additional ground of forum non conveniens. After receiving numerous detailed affidavits from the parties, Judge Metzner granted the motion to dismiss in a brief memorandum opinion. In the exercise of his discretion, he invoked the doctrine of forum non conveniens to dismiss the causes of action based upon abuse of process, prima facie tort and defamation.[6] The judge noted that

> The parties have hotly disputed whether the Geneva courts can or will agree to exercise jurisdiction over the defendant, since the general rule appears to be that suit is to be brought in the defendant's domicile. Defendant urges that trial can

proceed in Geneva if he submits to jurisdiction. Forum non conveniens cannot be invoked, of course, where an alternative forum does not exist. . . . Accordingly, the action is dismissed on the condition that if plaintiff institutes suit in Geneva, Switzerland, defendant consent forthwith to jurisdiction in that court. Should the Swiss court refuse to exercise jurisdiction, or the defendant refuse to submit to jurisdiction, plaintiff may move in this court to restore this action.

The judge also dismissed the claim based upon section 487 of the New York Judiciary Law because that statute only applies "to actions by an attorney, acting as an attorney, in matters pending in the courts of New York." Since the basis of the claim was defendant's testimony in Switzerland, Judge Metzner held that section 487 did not apply to these alleged facts. This appeal followed.

## II

The principal issues on appeal concern the district court's use of the forum non conveniens doctrine. Plaintiff-appellant argues that we must reverse because (1) defendant has failed to establish that there is an alternative forum where plaintiff may maintain the action, even if defendant consents to jurisdiction in Geneva; (2) even if an alternative forum now exists, there was none when the action was commenced, since defendant's present offer to submit to jurisdiction cannot retroactively constitute Geneva a convenient forum as of the time of suit; and (3) defendant has not shown that the Southern District of New York is so inappropriate a forum as to justify dismissal on forum non conveniens grounds.[7] Defendant-appellee takes issue with each of these contentions, and to them we now turn.

In discussing plaintiff's first argument, that defendant failed to demonstrate

---

against which only 500,000 francs were delivered from Schertenleib to Kohler.

**6.** The judge did not rule on whether these causes of action failed to state claims on which relief could be granted.

**7.** This last contention will be discussed in Part III, *infra*. Appellant's argument concerning section 487 is discussed in Part IV, *infra*.

the existence of an alternative forum, a prerequisite for application of forum non conveniens, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07, 67 S.Ct. 839, 91 L.Ed. 1055 (1947),[8] we assume that defendant has the burden on this issue. It is clear that defendant has the overall burden of proving that the case should be dismissed when forum non conveniens is applicable, see *Gulf Oil, supra*, 330 U.S. at 508, 67 S.Ct. at 843 ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); see also *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir.), *cert. denied*, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950), and defendant did sufficiently show that an alternative forum now exists. The district court had before it expert views of Swiss jurisdictional law. While neither expert said that plaintiff could originally have forced defendant to defend the three tort claims in Geneva,[9] defendant's expert did explain that a party could consent to jurisdiction "of a court in the canton of Geneva" and, if he did, "the same court shall not be entitled to refuse the case." The district judge apparently accepted this view as the basis for his conditional order of dismissal. The question whether defendant met his burden of proving the availability of an alternative forum to permit application of the forum non conveniens doctrine thus ultimately turns on resolution of the second, and most important, issue now before us, whether the current existence of an alternative forum suffices to give a district court the power to dismiss an action on forum non conveniens grounds on proper application of the relevant factors.

Plaintiff argues that this question has been conclusively answered negatively by *Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960) when read in

conjunction with *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). In *Gulf Oil*, the Court held that federal district courts had "inherent power to dismiss a suit pursuant to the doctrine of *forum non conveniens*." 330 U.S. at 502, 67 S.Ct. at 840. In affirming the dismissal by a federal district court in New York of a tort action arising out of events that occurred in Virginia, Justice Jackson pointed out:

> The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.

> .   .   .   .   .

> The federal law contains no   .   .   . express criteria to guide the district court in exercising its power. But the problem is a very old one affecting the administration of the courts as well as the rights of litigants, and both in England and in this country the common law worked out techniques and criteria for dealing with it. (Footnote omitted).

330 U.S. at 507, 67 S.Ct. at 842. Plaintiff stresses that in *Gulf Oil*, the Court also said,

> In all cases in which the doctrine of *forum non conveniens* comes into play, it presupposes at least two forums in which the defendant is amenable to process

> .   .   .   .

330 U.S. at 506–07, 67 S.Ct. at 842. This statement, however, was not directed at the question whether the alternative forum had to exist at the time that suit was commenced, since that was not an issue before the Court.

Plaintiff goes on to argue that precisely that issue was decided in *Hoffman v. Blaski, supra*, which construed 28 U.S.C.

---

8. One commentator argues that there is no alternative forum requirement for a forum non conveniens dismissal. Korbel, The Law of Federal Venue and Choice of the Most Convenient Forum, 15 Rutgers L.Rev. 607, 611 (1961). See also Blair, The Doctrine of Forum Non Conveniens in Anglo-American Law, 29 Colum.L.Rev. 1, 32–33 (1929). Given the strength of the *Gulf Oil* opinion, and the general assumption since

that it sanctioned an alternative forum requirement, we proceed on that basis.

9. The Geneva law appears to be that, in the ordinary case, such suits must be brought at the domicile of the defendant, unless there is property of the defendant that can be attached in Geneva, which does not seem to be the case here.

§ 1404(a), enacted after the decision in *Gulf Oil*. That section provides,

§ 1404. Change of Venue.

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In *Hoffman v. Blaski*, the Court held that the section authorized transfer only to an alternative forum in which jurisdiction over the defendant could have been obtained at the time suit was brought regardless of his consent. Plaintiff emphasizes the statement of Justice Whittaker for the majority,

But we do not see how the conduct of a defendant after suit has been instituted can add to the forums where "it might have been brought." In the normal meaning of words this language of section 1404(a) directs the attention of the judge who is considering a transfer to the situation which existed when suit was instituted.

363 U.S. at 343, 80 S.Ct. at 1089.[10]

We do not agree that *Hoffman v. Blaski* controls here, where the issue concerns the proper application of the common law doctrine of forum non conveniens. The Court there specifically construed statutory language which empowers transfers to a district court where an action "might have been brought," and rested heavily on the supposed clear meaning of the "plain words" of the statute. 363 U.S. at 344, 80 S.Ct. 1084. The common law doctrine as enunciated in *Gulf Oil* does not use the words of section 1404(a) construed in *Hoffman v. Blaski*. Consequently, the result reached in that case does not decide this one.[11] In a strong dissent in the companion case to *Hoffman v. Blaski*, Justice Frankfurter, joined by Justices Harlan and Brennan, pointed out that the common law doctrine did not require the more convenient forum to be in existence when plaintiff sued, *Sullivan v. Behimer*, 363 U.S. 335, 364, 80 S.Ct. 1084, 1100, 4 L.Ed.2d 1254 (1960):

It is entirely "in accordance" with this view of the doctrine of *forum non conveniens* to hold that transfer may be made at the instance of the defendant, regardless of the plaintiff's right as an original matter to sue him in the transferee court, so long as the defendant stipulates to going forward with the litigation there. Indeed, to hold otherwise as the Court does is to limit § 1404(a) to a much narrower operation than the nonstatutory doctrine of *forum non conveniens*. Investigation has disclosed several *forum non conveniens* cases, one of them in this Court, where dismissal of the action on the defendant's motion was made upon the condition of the defendant's voluntary submission to the jurisdiction of another more convenient forum when that forum was not available to the plaintiff as of right over the defendant's objection. (Citations omitted).

We are well aware that observations in dissent are not powerful precedent, but we do not read the majority in *Hoffman v. Blaski* as rejecting them. The majority simply read the language of the statute enacted after the *Gulf Oil* decision as foreclosing the construction supported by the dissenters. The "inherent power" of the district courts to utilize *forum non conveniens* still exists in situations, such as the one in this case, where section 1404(a) cannot apply because the more convenient forum is not a United States district court. Judge Kaufman said exactly that for this court in *Fitzgerald v. Westland Marine Corp.*, 369 F.2d 499, 501 n.3 (2d Cir. 1966). Plaintiff stresses that the Reviser's Note dealing with section 1404(a) states that the doctrine was drafted "in accordance with the doctrine of *forum non conveniens*." That gen-

---

10. The language was quoted from *Paramount Pictures, Inc. v. Rodney*, 186 F.2d 111, 119 (3d Cir. 1950), *cert. denied*, 340 U.S. 953, 71 S.Ct. 572, 95 L.Ed. 687 (1951).

11. Cf. *Telephonics Corp. and Fabrionics Corp. v. Lindly & Co.*, 291 F.2d 445, 447 (2d Cir. 1961)

(*Hoffman v. Blaski*, "based as it is on the specific and narrow wording of the transfer statute, has no bearing on the propriety of judicial action which does not purport to be based on that statute and which is taken pursuant to other, firmly established authority.").

eral observation is hardly conclusive in a situation where the statute was not intended to apply. Thus, the Supreme Court cases have not decided the issue in plaintiff's favor.

Moreover, the history of *Grammenos v. Lemos,* 457 F.2d 1067 (2d Cir. 1972), makes clear that the precise issue now before us remained an open one in this circuit, at least up until *Grammenos* was decided. In that case, two Greek citizens sued a Panamanian corporation and a Greek citizen, allegedly a resident of New York. The Southern District dismissed the complaint because of defective service and on the ground of forum non conveniens. This court reversed on the issue of service of process and pointed out that forum non conveniens was not appropriate at that time. Most significantly for this appeal, the opinion originally said that forum non conveniens could not be utilized because the alternate forum, Greece, was not available without the consent of the defendant, citing *Hoffman v. Blaski.*[12] However, after the opinion was filed, but before publication in the Federal Reporter, the opinion was revised to delete the reference to *Hoffman v. Blaski* and the proposition for which it had been cited. The revised opinion states, 457 F.2d at 1074 n.5:

> *Forum non conveniens* is not an appropriate ground for dismissal at this point. . . . . On the issue of availability of an alternative forum, the parties may wish to introduce proof of foreign law (cf. Rule 44.1, Fed.R.Civ.P.; 5 Moore, Federal

Practice, 44.–1.01[1]); normally when the plaintiff is remanded to a foreign forum, the defendant agrees on the record to submit to jurisdiction elsewhere and to post security for any judgment awarded there. (Citations omitted).

It is thus fair to characterize the issue either as open in this circuit, or as perhaps already resolved against plaintiff's position. In this regard defendant points to *Frangiskatos v. Liberian M/V Konkar Pioneer,* 471 F.2d 714 (2d Cir. 1972). That case was also a suit by a Greek citizen in the Southern District against a Panamanian corporation. Plaintiff argued, among other things, that even if the defendant consented to appearing in Greece, dismissal of defendant's motion on the ground of forum non conveniens was not proper. Nevertheless, on defendant's motion, Judge MacMahon dismissed the complaint on the ground of forum non conveniens, and relied in part on footnote 5 in the *Grammenos* opinion as ultimately amended. 353 F.Supp. at 404. We affirmed in a per curiam opinion "for the reasons stated in Judge MacMahon's opinion." 471 F.2d at 715. We agree that this supports defendant's position before us that forum non conveniens can be applied here. But since the specific issue was not fully discussed in the per curiam opinion in *Frangiskatos,* we prefer not to rest simply on that case.

Treating the question as an open one, then, we believe that strong reasons support the result reached by Judge Metzner.[13]

---

**12.** Footnote 5 of the opinion originally read as follows:

> *Forum non conveniens* is not an appropriate ground for dismissal. Even though the seamen's articles specified that Greek law would cover liability under the agreement, Greek courts take jurisdiction of tort cases only when the ship is owned by a Greek corporation or the tort occurred in Greek waters. *See Hellenic Lines v. Rhoditis,* 412 F.2d 919, 922 n.6 (5th Cir. 1969). Neither condition was met here; therefore the seamen could sue in Greece only with Nile's consent. In *Hoffman v. Blaski,* 363 U.S. 335 [80 S.Ct. 1084, 4 L.Ed.2d 1254] (1960), the Supreme Court held that a forum in which the plaintiffs could not sue as a matter of right, but in which they were dependent on

the defendant's consent to proceed, was not an available forum under the doctrine of *forum non conveniens.*

The footnote is reprinted in *Farmanfarmaian v. Gulf Oil Corp.,* 437 F.Supp. 910, 921–22 (S.D.N.Y.1977); *Frangiskatos v. Liberian M/V Konkar Pioneer,* 353 F.Supp. 402, 404 (S.D.N.Y.), *aff'd,* 471 F.2d 714 (2d Cir. 1972).

**13.** We need not decide the intriguing question, left open in *Gulf Oil v. Gilbert, supra,* 330 U.S. at 509, 67 S.Ct. 839, whether, in diversity cases like this one, state law or federal law is the source of the rules governing the forum non conveniens doctrine. The rule of New York appears to be the same as that which we announce today, that the current availability of an alternative forum suffices to permit application of the doctrine. *See, e. g., Silver v. Great*

If litigation is in a clearly inconvenient forum, why should defendant and the court be burdened with its continuing there, if an alternative forum now exists so that plaintiff will not be without a remedy? When the alternative forum is foreign, particularly where, as here, it is a civil law country, our courts have difficulty discerning whether a non-resident defendant really would be subject to jurisdiction in the foreign country without his consent. Indeed, the court may receive conflicting expert opinions on this issue. If the defendant consents to suit in the foreign alternate forum, and if that appears to be sufficient under the foreign law, why waste the litigants' money and the court's time in what is essentially an unnecessary and difficult inquiry into the further intricacies of foreign jurisdictional law?[14] This added difficulty serves to distinguish this situation from that covered by section 1404(a). When the alternative forum is an American state, the court hearing the motion is more likely to perceive correctly whether the defendant was initially subject to suit there. If, moreover, contrary to the expert testimony apparently relied on by Judge Metzner in this case, Geneva refuses jurisdiction notwithstanding defendant's consent, plaintiff is still protected by the conditional nature of the dismissal. Thus further inquiry into foreign jurisdictional law really is needless since it is so easily obviated by use of the typical conditional dismissal device.

█ Plaintiff argues that this practice is unfair to him in that he first brought suit in allegedly the only place he could, and now, after he tries to sue defendant in Geneva, he may end up back here again, all at his inconvenience and expense. The an-

swer to this is that a district court should not dismiss unless it justifiably believes that the alternative forum will take jurisdiction, if the defendant consents. Once that finding has been made, the remaining but unlikely possibility that the plaintiff may ultimately have to return to the inconvenient forum is a factor to be weighed in deciding whether to dismiss, *see, e. g., Fiorenza v. United States Steel International, Ltd.,* 311 F.Supp. 117, 120–21 (S.D.N.Y. 1969), but this kind of improbability should not automatically preclude the use of forum non conveniens.

Plaintiff argues that he had a *right* to sue defendant only in New York, and allowing defendant thereafter to consent to suit in Geneva unfairly allows a defendant, but not a plaintiff, to determine the district in which the suit will continue. It must be conceded that this spectre of reverse forum shopping appeared to carry weight with the majority in *Hoffman v. Blaski,* who saw it as "gross discrimination," 363 U.S. at 344, 80 S.Ct. 1084. But the Court there emphasized that it was engaged in statutory interpretation and would not attribute that "discriminatory purpose" to Congress. As indicated, we therefore regard the issue as open when a district court is called upon, as here, to exercise its "inherent power." Moreover, we would be less than candid if we did not admit that we regard as persuasive Justice Frankfurter's response to this argument for the dissenters in *Hoffman v. Blaski:*

> If the interest of justice is being served, as it must be for a transfer to be made, how can it be said that there is "discrimination" in any meaningful sense?

363 U.S. at 365, 80 S.Ct. at 1101.[15] The ultimate disposition of the question is in the

---

*American Insurance Co.,* 29 N.Y.2d 356, 359–60, 328 N.Y.S.2d 398, 278 N.E.2d 619 (1972). On the similarity of the forum non conveniens doctrine as applied in New York and the federal courts generally, see *Olympic Corp. v. Societe Generale,* 462 F.2d 376, 379 (2d Cir. 1972).

**14.** As Judge Friendly has pointed out,

[T]ry as we may to apply the foreign law as it comes to us through the lips of the experts, there is an inevitable hazard that, in those areas, perhaps interstitial but far from inconse-

quential, where we have no clear guides, our labors, moulded by our own habits of mind as they necessarily must be, may produce a result whose conformity with that of the foreign court may be greater in theory than it is in fact. *Conte v. Flota Mercante Del Estado,* 277 F.2d 664, 667 (2d Cir. 1960).

**15.** Commentators have almost uniformly supported Justice Frankfurter's views in *Hoffman v. Blaski* generally, and, in particular, on whether adopting his position would result in "gross discrimination." *See, e. g.,* Korbel, *su-*

hands of the district judge, not the consenting defendant's. Not to allow the device of conditional dismissal in this case is unfair to defendant for whom the litigation is unnecessarily burdensome, clogs the district court with litigation which really belongs elsewhere, and, as will be seen below, serves no interest of plaintiff except possibly in enabling him to extract a settlement from defendant.

We conclude, therefore, that the district court had the power to exercise its discretion to apply the doctrine of forum non conveniens even if there was no alternative forum in which plaintiff could have originally commenced his action without the consent of defendant.[16] We must still consider whether on these facts that discretion was abused. That question, as we have already indicated, is comparatively simple to decide.

### III

Thirty years ago, the Supreme Court observed that the doctrine of forum non conveniens "leaves much to the discretion of the court," see *Gulf Oil Corp. v. Gilbert, supra,* 330 U.S. at 508, 67 S.Ct. 839, and the cases since confirm that the discretion is wide. *See, e. g., Fitzgerald v. Texaco, Inc.,* 521 F.2d 448, 451 (2d Cir. 1975), *cert. denied,*

423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976). Indeed, were it not for the somewhat unusual fact that it is the forum resident who seeks dismissal, we would have to say very little regarding the exercise of Judge Metzner's discretion in dismissing this case. In fact, as will appear below, it might have been an abuse of discretion had he retained the action. We feel a special need, however, to discuss the facts of the case in light of the relevant forum non conveniens balancing factors, *see, e. g., Gulf Oil Corp. v. Gilbert, supra,* 330 U.S. at 508–509, 67 S.Ct. 839, in order to demonstrate just how necessary it is for district courts to have the power to dismiss conditionally in cases like this.

We begin by noting that plaintiff chose this forum and defendant resides here. This weighs heavily against dismissal. In this rare case, however, none of the relevant events occurred here, and none of the sources of proof are here. Plaintiff does refer to one purported New York contact. Plaintiff is accused in Switzerland, as one of the bases underlying the criminal charges against him, of having caused the lifting of an attachment that had been secured on assets of the Banque Exel in New York, without the authorization, and to the prejudice, of his then client, The Wall Street Fund. Plaintiff argues that four

---

pra note 8; Decision, 49 Geo.L.J. 765 (1961); Recent Case, 14 Vand.L.Rev. 646 (1961). The authorities are collected in C. Wright, Law of Federal Courts 189 (3d ed. 1976).

Courts also view *Hoffman v. Blaski* as subject to "well-founded criticism and . . . [see] no reason to extend it unnecessarily." *A. J. Industries, Inc. v. United States Dist. Ct., C. D. of Cal.,* 503 F.2d 384, 387 (9th Cir. 1974). *See also Ferri v. United Aircraft Corp.,* 357 F.Supp. 814, 818 (D.Conn.1973) (Newman, J.) (*Hoffman v. Blaski* rule said to serve "no substantial purpose" and "is simply the result of . . . [a] technical view of § 1404(a)").

16. We recognize that this conclusion may be contrary to the views of the Fifth Circuit. *See, e. g., Tivoli Realty v. Interstate Circuit,* 167 F.2d 155, 156–57 (5th Cir.), *cert. denied,* 334 U.S. 837, 68 S.Ct. 1494, 92 L.Ed. 1762 (1948), in which it is stated, either as dicta or as an alternative holding, that

At least two such forums [in which the defendant is amenable to process] must be open to the plaintiff before the [forum non

conveniens] doctrine comes into play; and they shall not be dependent merely upon the will or grace of the defendant, but must be provided by law.

Assuming that the statement is a holding, we note that the "more convenient" forum would have been another federal district court (section 1404(a) was apparently not yet applicable), thus distinguishing that case from this one. See discussion in the text at note 14, *supra.* We also note *Menendez Rodriguez v. Pan American Life Insurance Co.,* 311 F.2d 429, 432–33 (5th Cir. 1962), *vacated on other grounds,* 376 U.S. 779, 84 S.Ct. 1130, 12 L.Ed.2d 82 (1964), reversing a district court's dismissal on forum non conveniens grounds. Although that decision quotes the *Tivoli* language above, it is unclear whether the reversal rests on that point, or on the ground that no justice could be obtained in the courts of Cuba, the proposed alternative forum. In any event, to the extent that either *Tivoli* or *Rodriguez* is viewed as directly in conflict with this decision, we respectfully disagree.

New York lawyers involved in the litigation, in which the attachment was secured, are relevant witnesses in this action against Traum. It is clear from the affidavits, however, that nothing that occurred in New York is relevant here. What is relevant is plaintiff's alleged action in Switzerland of directing the lifting of that attachment in breach of his fiduciary obligations, which were created in Switzerland. Plaintiff has thus not indicated any plausible reason why this forum is now more convenient for him than Geneva.

On the other hand, every other fact points to Geneva as the more convenient forum and highlights defendant's problems in defending in this forum. All of the prospective witnesses, apart from Traum himself, either are Swiss or reside in European countries. All of these witnesses are obviously beyond the compulsory process of the district court. Even if all of the seventeen witnesses Traum claims to be essential to his defense were willing to testify in New York, the expense of bringing them here might be prohibitive. Perhaps the most significant problem is presented by the inability to bring plaintiff and his alleged co-conspirator here for live cross-examination before a factfinder, due to their incarceration in Switzerland. Since the crux of this litigation is the truth or falsity of Traum's charges that plaintiff is a swindler, to be able to take the alleged co-conspirators' testimony by letter rogatory only would be a very serious handicap. In contrast to all of these difficulties is the relatively inexpensive alternative of allowing Traum to go to Geneva, which he prefers.

Documents constituting necessary evidence are for the most part located in Geneva. Since many are in files of Swiss banks, taxing authorities and courts, it may be impossible to obtain them for trial here. Moreover, even if the documents and witnesses could be brought here, there is a serious problem of translation. The only record of Traum's allegedly defamatory testimony are French minutes dictated by the Swiss judge from the simultaneous French translation of Traum's testimony in English. More to the point, most of the pertinent documents relevant to the underlying dispute are in French. The expense of translation, which is potentially substantial, would be totally avoided if trial is in Geneva.

Another difficulty that must be confronted if trial is held in the Southern District is that, as the parties now seem to agree, Swiss law appears to apply to the tort claims. This necessitates the introduction of inevitably conflicting expert evidence on numerous questions of Swiss law, and it creates the uncertain and time-consuming task of resolving such questions by an American judge unversed in civil law tradition. See note 14, *supra*. Determining the content of Swiss law is obviously easier at a trial in Geneva. Cf. *Gulf Oil Corp. v. Gilbert, supra,* 330 U.S. at 509, 67 S.Ct. 839. Finally, there are a number of proceedings pending in Geneva, involving the exact same factual matters at issue here. These litigants already have Swiss counsel well versed in the complicated factual details of this dispute.

■ Thus, we find the balance of conveniences weighs so heavily in favor of trial in Geneva that not only the usual deference accorded plaintiff's choice of forum is outweighed, but also the potential inconvenience to plaintiff that might result from what appears to be the relatively unlikely chance that Switzerland will not take jurisdiction of this suit even if defendant consents.

In view of all of the above, it is difficult to understand why plaintiff would prefer to litigate here when it is obviously cheaper for him, as well as for defendant, to litigate in Geneva, where it is also likely that the factual record will be more complete, and that application of the law to the facts will be more accurate, unless one attributes to plaintiff a desire to cause defendant extra expense even if at greater cost to himself. It takes no great stretch of the imagination to view this suit as part of just such a harassment campaign. But whether or not that is so here, the mere possibility of such a lawsuit strongly suggests why district

courts should have the power to dismiss the action on condition that the lawsuit proceed elsewhere. So long as the plaintiff is not left remediless, we fail to see why the district court must retain the action regardless of the circumstances.

To insure that plaintiff is not left remediless, however, we need to add another condition to the dismissal. When Judge Metzner dismissed the action he stated that "[s]hould the Swiss court refuse to exercise jurisdiction, or the defendant refuse to submit to jurisdiction, plaintiff may move in this court to restore this action." We add the condition that defendant must waive any statute of limitations defense that has arisen since the commencement of this action in the Southern District.[17]

### IV

██ We also hold that plaintiff's cause of action based on section 487 of New York's Judiciary Law, quoted in footnote 4, *supra*, was correctly dismissed for failure to state a claim. Judge Metzner held that provision, which authorizes recovery of treble damages by any party injured because of a deceit practiced on a court by an attorney, not to apply to acts by attorneys outside New York's territorial borders. We are cited to no case, and our own research reveals none, where this provision has been applied extraterritorially.

No one questions the power of the State of New York to impose disciplinary sanctions against New York attorneys for acts occurring outside the state that are deemed to render them unfit to practice inside the state. *See, e. g., In the Matter of Richard M. Nixon, An Attorney,* 53 A.D.2d 178, 385 N.Y.S.2d 305 (1st Dept. 1976). However, we believe that section 487 is not an exercise of that power, but is rather intended to regulate, through criminal and civil sanctions, the conduct of litigation before the New York courts. We doubt it was the purpose of the New York State legislature to fasten on its attorneys criminal liability

and punitive damages for acts occurring outside the state. It seems more likely that the concern is for the integrity of the truth-seeking processes of the New York courts, not for injury to foreign litigants. Should conduct beyond the state's borders expose an attorney as unfit to practice in New York, the State has enacted ample statutory authority, apart from section 487, to protect itself.

Plaintiff cites to us *Nones v. Security Title and Guaranty Co.,* 4 Misc.2d 1057, 162 N.Y.S.2d 761 (Sup. Ct. Nassau Co. 1956), but that case is not to the contrary since it applied section 487 to deceit before an Official Referee in New York. While this is illustrative of a broad conception of "court" within the meaning of the statute, it does not bear on the issue of extraterritorial application.

In conclusion, we affirm the judgment of the district court in all respects except to add a condition to the dismissal for forum non conveniens.

---

**17.** Plaintiff argues to us that a Swiss judgment would not be fully enforced in New York, but we have no reason to believe that this is so.

See generally New York Civil Practice Law and Rules, Art. 53.