**CALAVO GROWERS OF CALIFORNIA, Plaintiff-Appellant-Cross Appellee,**

**v.**

**Generali BELGIUM; Compagnie D'Assurances Maritimes Aeriennes et Terrestres; Deutsche Versicherungs-Gesellschaft in Bremen; Black Sea and Baltic General Insurance Company Limited; Assurantie Van de Belgische Boerenbond; General Accident Fire and Life Assurance Corporation Limited; Groep Josi; Mercator; De Ster (L'Etoile); Fidelitas; L'Europeene; La Securite Belge; Naviga; Compagnie Europeene D'Assurances Industrielles (C.E.A.I.); Belgamar; Assubel; Assurances Generales; and La Royale Belge, Defendants-Appellees-Cross Appellants.**

**Nos. 1100, 1241, Dockets 80–7016, 80–7046.**

United States Court of Appeals, Second Circuit.

Argued May 29, 1980.

Decided Aug. 4, 1980.

---

Jerry L. Siegel, New York City (Coudert Brothers, Mark D. Lebow, Lynne M. Barry, New York City, Tuttle & Taylor, Charles B. Rosenberg, Los Angeles, Cal., of counsel), for plaintiff-appellant-cross appellee.

Donald M. Kennedy, New York City (Donovan, Maloof, Walsh & Kennedy, David L. Maloof, Gerard S. Doyle, Jr., New York City), for defendants-appellees-cross appellants.

Before FEINBERG, Chief Judge, and NEWMAN and KEARSE, Circuit Judges.

FEINBERG, Chief Judge:

Calavo Growers of California appeals from a judgment of the United States District Court for the Southern District of New York, Robert W. Sweet, J., that found jurisdiction over defendants, eighteen for-

eign insurance underwriters, but dismissed on the ground of forum non conveniens Calavo's action for breach of contract and fraud. Sixteen of the underwriters cross-appeal from so much of the judgment as denied their motion to dismiss on the ground of lack of jurisdiction. Calavo argues that the lower court properly found jurisdiction over these underwriters but erred in holding that New York was an inconvenient forum; in contrast, the cross-appellants contend that the court erred as to jurisdiction, but correctly decided the issue of forum non conveniens. Since we conclude that the district judge did not abuse his discretion in dismissing this action on the basis of forum non conveniens, we find it unnecessary at this time to determine whether he erred in finding jurisdiction over the cross-appellant underwriters. We believe, however, that a forum non conveniens dismissal of plaintiff's action should have been conditioned on the agreement of all the underwriters to terms set forth below; accordingly, we remand this case for further proceedings consistent with this opinion.

## I.

The relevant facts are as follows: Calavo, a California corporation authorized to do business in New York, is an agricultural marketing cooperative. In 1977, Calavo purchased several shipments of Turkish figs through its purchasing agent Effron Brokerage Corp., a New York corporation. Effron also arranged insurance for the fig shipments by contacting Bain Dawes (Int'l) Ltd. (Bain Dawes), a broker for Lloyd's of London located in London. Effron instructed Bain Dawes to acquire both standard marine insurance and "rejection" insurance for the figs; the latter type of insurance protects against the risk of rejection or condemnation of the insured goods by the government of the country of import for failure to meet local health standards.

In order to arrange the insurance, Bain Dawes apparently contacted Ch. Van den Bosch-J.F. De Laet (Van den Bosch), a Belgian insurance broker. Van den Bosch in turn contacted defendant underwriters all of whom were organized, and have their principal place of business, in Europe.[1] Only two of the underwriters are authorized to do business in New York. By a cover note issued on a Van den Bosch form, the underwriters bound themselves to a policy of marine and rejection insurance naming Effron as the insured. This cover note evidently was forwarded to Bain Dawes in London, which then issued another cover note directly to Effron. As the various shipments were made, Effron would notify Bain Dawes; individual insurance certificates naming Calavo as the insured would then be issued on Van den Bosch forms that were signed by an agent for all the underwriters. The certificates, as well as the bills for premiums due upon them, were mailed to Effron in New York.

Eight of the thirteen shipments of figs sent from Turkey to New York were rejected in whole or in part by the United States Food and Drug Administration (FDA) on the ground that they were infested by insects. Upon receiving notice of the rejections and in compliance with the instructions given in the insurance certificates, Effron contacted Toplis & Harding (T & H), a maritime surveyor located in New York. After instructing Effron to warehouse the shipments, T & H surveyed them and prepared reports that apparently were sent to the underwriters; it then solicited bids for the resale of the figs, and recommended to Effron that the highest bid be accepted, which recommendation Effron followed.

Effron submitted formal insurance claims to the underwriters through T & H. The underwriters refused to pay these claims, however, allegedly on the ground that the insurance policies required Calavo to prove

---

1. From the record before us, it appears that fourteen of the underwriters were incorporated, and have their principal place of business, in Belgium; two were incorporated, and have their principal place of business, in the United Kingdom; one was incorporated, and has its principal place of business, in France; and one was incorporated, and has its principal place of business, in West Germany.

affirmatively that the contamination of the figs had occurred during, rather than before, the shipments. Thereafter, the underwriters commenced an action in the Commercial Court of Antwerp for a declaratory judgment that they were not liable on the policies. Approximately two weeks later, Calavo instituted the present action, alleging that the underwriters had breached the contract of insurance and had fraudulently failed to disclose their interpretation of the insurance policy.

## II.

In the district court, defendants moved to dismiss the complaint both on the ground that the court lacked in personam jurisdiction over them and on the ground that New York was an inconvenient forum. The court below held that it had jurisdiction over all defendants; as noted, two of the underwriters were authorized to do business in New York and apparently do not now contest the court's jurisdiction over them. As to the remaining sixteen insurers, the court concluded that it had jurisdiction over N.Y.Ins.Law § 59–a.[2] As to all eighteen defendants, the court then granted the motion to dismiss on the ground of forum non conveniens. On this appeal, Calavo attacks the district court's ruling on forum non conveniens, while defendants urge that we affirm that ruling, but reverse the lower court's finding of jurisdiction over the sixteen insurers not authorized to do business in New York.

■ If the district court had no jurisdiction over the sixteen unauthorized underwriters, New York clearly was an inconvenient forum, since only two of the eighteen defendants could have been sued here. On the other hand, if the court did have jurisdiction over all defendants, the question of whether New York was an inconvenient forum is a much closer one. However, while not all of us might have decided this issue as did the court below, we recognize that a district judge has "wide discretion" in determining the issue of forum non conveniens. See *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Alcoa Steamship Co. v. M/V Nordic Regent*, 636 F.2d 860 at 871 (2d Cir. 1980) (in banc); *Farmanfarmaian v. Gulf Oil Corp.* 588 F.2d 880, 882 (2d Cir. 1978). Even on the assumption that the district court had jurisdiction over all eighteen defendants, we believe that the district court's dismissal of this action on the ground of forum non conveniens was not a clear abuse of discretion. See *Farmanfarmaian, supra*, 588 F.2d at 882. Therefore, we need not reach the question whether the court erred in finding that it had jurisdiction over the sixteen defendants unauthorized to do business in New York.

■ In determining whether New York was a convenient forum, the district court properly took into account the factors set forth in *Gulf Oil*, supra, 330 U.S. at 508–09, 67 S.Ct. at 843. The court considered first the "private interest" of the litigants, including the "relative ease of access to sources of proof," the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses," and "all other practical problems that make trial of a case easy, expeditious and inexpensive." Id. at 508, 67 S.Ct. at 843. These factors, in the court's view, all pointed to the conclusion

2. N.Y.Ins.Law § 59 ·a subjects insurers not authorized to do business in New York to the jurisdiction of New York courts in suits by insured parties under certain insurance contracts. Under § 59–a(2), unauthorized insurers are deemed to have appointed the Superintendent of Insurance as their agent for service of process if they effect "by mail or otherwise" certain "acts" in New York, including the issuance or delivery of insurance contracts to New York residents, the collection of premiums

for such contracts, or any other transaction of business. While rejecting the other bases of jurisdiction under § 59 ·a that Calavo contended were applicable here, the district court held that Calavo had made out a prima facie case of delivery of the insurance policies through the agency of Van den Bosch; the court therefore concluded that it had jurisdiction over the underwriters not authorized to do business in New York.

that New York was an inconvenient forum. The focal point of this litigation is not New York, where the rejection of the figs took place, but rather Europe, where the contract of insurance was negotiated and where payment under the contract was refused. As the district court noted, Calavo did not contest in the court below either the findings of infestation made by the FDA or the assessment of damages made by T & H; instead, the gravamen of the complaint was breach of contract and fraud.[3] These allegations will necessitate an inquiry into the circumstances surrounding the formation of the contract and the intentions of the parties who negotiated it, almost all of whom are located in Europe. The underwriters all are organized and have their principal places of business in Europe; sixteen of them do no business in New York. Moreover, neither Bain Dawes, the London broker who apparently acted as Calavo's agent, nor Van den Bosch, the Belgian broker who negotiated the insurance contract, is subject to the court's compulsory process, although representatives of both may be key witnesses. Finally, the documents surrounding the negotiation are apparently located in Belgium. In contrast, the lower court found that with the possible exception of Effron and a representative of T & H, there were no essential witnesses located in New York.

Furthermore, to the extent that evidence will be required as to the condition of the figs in Turkey prior to shipment, a European forum is certainly no less convenient than one in New York.

The court also looked to the "[f]actors of public interest" that *Gulf Oil* held to be relevant to the application of the doctrine of forum non conveniens. 330 U.S. at 508–09, 67 S.Ct. at 843. The lower court found that Belgium was apparently the jurisdiction most intimately concerned with the issues raised in this litigation.[4] The suit involves its residents; more importantly, it involves a contract negotiated and allegedly breached in Belgium, and may require an inquiry into the customs of the insurance industry in Belgium and Europe at large.[5] This connection with the law suit militates, the lower court found, in favor of the application of Belgian law, see *Babcock v. Jackson*, 12 N.Y.2d 473, 481–82, 240 N.Y.S. 743, 191 N.E.2d 279 (1963); the likelihood that Belgian law would govern in turn lends weight to the conclusion that the suit should be prosecuted in that jurisdiction. See *Schertenleib v. Traum*, 589 F.2d 1156, 1165 (2d Cir. 1978); cf. *Gulf Oil*, supra, 330 U.S. at 509, 67 S.Ct. at 843. Finally, the lower court noted that judicial efficiency will be served by trying this case in Belgium, where the underwriters' action is al-

---

**3.** Calavo alleged in its complaint that "[t]his action for damages arises from defendants' fraud in connection with the issuance of, and breach of, an insurance contract and the policies thereunder." More specifically, Calavo alleged that the underwriters had conspired to adopt a construction of the rejection clause that was "materially at variance with the plain meaning of the clause" in that it required Calavo to show that the condition causing rejection arose during shipment of the goods rather than before shipment.

At oral argument before us, it appeared for the first time that the terms of the contract were not in fact in dispute. The parties disagree on the responsibility for this new-found harmony, each side claiming that the other has changed its position regarding the meaning of the rejection clause. But regardless of who has changed position, the absence now of any contract interpretation issues does not affect our disposition of this case, because essential evidence as to the condition of the figs prior to shipment would still lie outside New York.

**4.** Calavo argues that the district court failed to give any consideration to New York's substantial interest in protecting its residents from fraudulent practices by foreign insurers, as evidenced by N.Y.Ins.Law § 59 a. That statute defines the jurisdiction of New York courts over insurance corporations not authorized to do business in New York. But the doctrine of forum non conveniens presupposes that the court has jurisdiction over the parties. Thus, section 59-a does not preclude a court from determining, as did the district court here, that it has jurisdiction but that New York is an inconvenient forum.

**5.** The district court also pointed out that there is an "element of reliance" that argues in favor of the application of Belgian law, since the defendants never left Europe or sought this business in New York, and apparently did not know initially that the shipments of figs were destined for New York.

ready in progress; by dismissing this suit, the court pointed out, needless duplication of proof and waste of judicial resources will be avoided. Cf. *Gulf Oil*, supra, 330 U.S. at 508, 67 S.Ct. at 843.

We do not mean to suggest that the issue whether New York was an inconvenient forum could only have been decided one way. Nonetheless, the district court applied the proper tests, and carefully considered both the public and private interests at stake. Under the circumstances, we cannot say that the district court abused its discretion by dismissing the action. We do believe, however, that a dismissal on this ground should have been conditional only. The doctrine of forum non conveniens presupposes that an alternative forum is available. See *Gulf Oil*, supra, 330 U.S. at 506–07, 67 S.Ct. at 842. The court below noted that the existence of an alternative forum was uncontested in this case, and assumed that because defendants had invoked the jurisdiction of the court in Antwerp, they will be subject to its jurisdiction in an action brought by Calavo against them there. While the court's assumption in this regard may be correct, we believe that it would have been wiser to make the dismissal conditional upon the willingness of the Belgian courts to hear this case, and upon the consent of all of the defendants to submit to jurisdiction in Belgium.[6] As we pointed out in *Schertenleib*, supra, 589 F.2d at 1163, the conditional dismissal device obviates the need for extensive inquiry into foreign jurisdictional law, since if the foreign court refuses to take jurisdiction, "plaintiff is still protected by the conditional nature of the dismissal." Furthermore, we think that the dismissal also should have been conditioned upon an agreement by defendant underwriters both to waive any statute of limitations defense that has arisen since the commencement of the action in the Southern District and to pay any judgment that might be rendered against them. See *Alcoa Steamship*, supra, at 871 n.16; *Schertenleib*, supra, 589 F.2d at 1166; *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 449 (2d Cir. 1975), cert. denied, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976).

Since defendants have consistently maintained that the Belgian court is an adequate alternative forum, it seems unlikely that they would have objected to any of the foregoing conditions, which do no more than *ensure* the adequacy of the alternative forum. We have therefore concluded that the simplest and most straightforward disposition of plaintiff's appeal is to remand for a determination of whether the defendants will now consent to a conditional dismissal. If all of the defendants so consent, the district court may enter an appropriate order conditionally dismissing the action.

This disposition renders unnecessary for the present an adjudication of defendants' cross-appeal challenging the district court's finding of personal jurisdiction. We shall retain jurisdiction over the cross-appeal. We anticipate that it will be mooted by entry of an order of conditional dismissal, and, should such an order be entered, we expect that we will be promptly advised. However, if for some unforeseen reason all of the defendants do not consent to a conditional forum non conveniens dismissal, then upon notification of the parties we will once

6. Calavo argues that it submitted an affidavit by a Belgian attorney that suggests that Belgium may not be an adequate alternative forum, both because the Commercial Court of Antwerp may not have subject matter jurisdiction over the underwriters' action and because in any event proceedings in that court are likely to be inordinately protracted. That affidavit does not directly state, however, that Belgian courts would not entertain an action by Calavo against the defendants; in contrast, defendants filed an affidavit by another Belgian attorney that stated that Belgian courts "are fully prepared to render an impartial decision based upon the merits of the case and to direct and enforce the appropriate remedy for the prevailing parties." On this record, we cannot say that the district court was not justified in believing that Belgium was an adequate alternative forum. See *Schertenleib v. Traum*, 589 F.2d 1156, 1163 (2d Cir. 1978). But as we suggested in *Schertenleib*, supra, 589 F.2d at 1163, even when the district court "justifiably believes" that there is an adequate alternative forum, it is advisable to make any dismissal conditional in nature when there is uncertainty or conflict between expert opinions with regard to foreign jurisdictional law.

again take up the cross-appeal. For this purpose, we shall not consider a defendant's consent to entry of a conditional dismissal as having any effect on the personal jurisdiction issue.

Remanded with no award of costs.

NEWMAN, Circuit Judge, concurring:

I concur, but add a word of caution to emphasize the controlling principles that just barely permit the result reached in this case. First, the plaintiff's choice of forum is to be respected unless the balance of both public and private interests strongly justifies a transfer. The Supreme Court has emphasized that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

Second, the assessment of whether the balance of public and private interests strongly overcomes the plaintiff's choice of forum must be made in light of the realities of modern transportation and communications. A forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel. It will often be quicker and less expensive to transfer a witness or a document than to transfer a lawsuit. Jet travel and satellite communications have significantly altered the meaning of "non conveniens."

There is an understandable temptation in a busy district like the Southern District of New York to transfer cases that can as appropriately or even slightly more appropriately be tried elsewhere. That temptation must be resisted. The plaintiff's choice of forum should normally be respected. The circumstances of this case approach the limits in which a district judge may exercise discretion to transfer to another forum.