**SUMMIT, LTD. and Wong Kit Hong, Plaintiffs,**

v.

**Harold LEVY, Defendant.**

**No. 83 Civ. 7857 (RWS).**

United States District Court, S.D. New York.

May 7, 1987.

See also 111 F.R.D. 40.

Polatsek and Sclafani, New York City, for plaintiffs; Leonard A. Sclafani, of counsel.

Silverman & Harnes, New York City, for defendant; Joan T. Harnes, of counsel.

## OPINION

SWEET, District Judge.

Plaintiffs Summit, Ltd. ("Summit") and Wong Kit Hong ("Wong") have moved for an order dismissing defendant Harold Levy's ("Levy") counterclaim on the grounds of *forum non conveniens* and inability to join indispensable parties pursuant to Fed.R.Civ. 12(b)(7) and 19. For the reasons discussed below, the motion is denied.

### Prior Proceedings

In October, 1983, plaintiffs commenced this action to recover $160,000, the amount of an alleged loan made by plaintiffs to Levy pursuant to an agreement dated January 2, 1977, plus interest and any increase in value of stock of the Flagstaff Corporation pledged as collateral for the loan. In his amended counterclaim, dated May 15, 1984, Levy alleged that plaintiffs had wrongfully seized shares of Compra, Ltd. ("Compra") held as collateral for additional advances to Levy totalling $150,000. Levy has asserted that such seizure was carried out without notice to Levy of a contemplated foreclosure and in violation of a shareholders' agreement according to Compra the right of first refusal. Levy seeks the return of 350 shares of Compra stock held by plaintiffs in exchange for all monies due plaintiffs less dividends declared on the Compra stock.

On August 17, 1984, this court, the Honorable Abraham D. Sofaer presiding, issued an order directing that the plaintiffs deposit with this court the 350 shares of Compra stock which Levy claims they wrongfully seized and that Levy pay plaintiffs $106,-000 on a loan unrelated to the Compra stock transaction. Judge Sofaer ordered that if Levy proved to be entitled to ownership of the stock, it would be delivered to him upon payment of any amount judicially determined to be owing plaintiffs. If plaintiffs were proved entitled to the stock, it would be returned to them.

On July 9, 1985, Summit commenced a lawsuit in Aruba, Netherlands Antilles, against Compra asking for a declaration that Summit is the possessor of 700 bearer shares of Compra. According to plaintiffs, the Netherlands Antilles action will decide the validity and existence of the shareholders' agreement alleged in Levy's counterclaim.

### Facts

For purposes of this motion, plaintiffs' version of the facts will be accepted as true. Wong is a citizen of the Netherlands, residing in Curacao, Netherlands Antilles. Summit is a corporation organized under

the laws of Cayman, British West Indies, having its principal office in Grand Cayman, British West Indies. Levy is now a resident of New York, but during the times relevant to the counterclaim was a resident of the Netherlands Antilles and New Jersey. Virtually all of the transactions at issue took place either in the Netherlands Antilles or otherwise beyond the jurisdiction of this court.

According to the plaintiffs, in 1975, while in the Netherlands Antilles, Levy sought to purchase 50 shares of Compra (then known as Jan Bodegam & Co.) stock which could be purchased for $150,000. Levy did not have the money to buy these shares and requested a short term loan from Summit which also wished to buy 50 Compra shares. Levy and Wong jointly formed Arncott, Ltd. ("Arncott"), a Grand Cayman, British West Indies corporation, to purchase and hold the Compra stock.

Arncott financed its purchase of 100 shares of Compra stock as follows: (i) Levy and his wife Diana (now deceased) borrowed $150,000 from Summit which he promised to repay in a short time; (ii) the Levys in turn loaned the $150,000 which they borrowed from Summit to Arncott in order to facilitate Arncott's purchase of Compra stock; (iii) at the same time, Summit itself purchased 50 shares of Compra stock and deposited them with Arncott as its contribution to Arncott; (iv) with the $150,000 that it had borrowed from the Levys, Arncott in turn purchased 50 shares of Compra stock.

Despite Summit's frequent requests for repayment, more than a year passed without any repayment by the Levys. At this time, the Levys requested an additional year within which to repay the $150,000 loan.

Plaintiffs agreed to the Levys' request for an extension of the loan provided that the Levys agreed to memorialize the loan in writing, agreed to pay interest on the loan from the date it was originally made, and further agreed to provide plaintiffs with security for repayment of the loan in the form of a pledge of the Levys' shares of Arncott as collateral. The Levys had already pledged the Compra shares, or their beneficial interest in them, to Summit and Wong at the time the loan was originally made to them.

The Levys consented to these terms and on January 2, 1977, executed a written agreement in Aruba, embodying each and all of these terms. The repayment of the loan was fully secured since Summit now owned or controlled virtually all of the stock of Arncott, which company in turn owned and held the Compra stock purchased with the proceeds of Summit's loan to the Levys. When the loan became due pursuant to the written agreement in January, 1978, the Levys defaulted.

Over the course of the next several months following the default, plaintiffs made numerous demands for repayment of the loan. These demands were met by promises of repayment and pleas for further patience.

In the Spring of 1978, in Aruba, Levy told Wong that he was in deep financial trouble and that numerous creditors were about to foreclose on substantially all of the Levys' assets. Since Levy did not have the money to repay the loan, he offered to transfer to plaintiffs the Compra stock which was purchased with the money plaintiffs had loaned him.

Plaintiffs accepted Levy's offer. The transaction was accomplished as follows: (i) Arncott, with the consent of Wong, who controlled virtually all of the Arncott shares, sold to the Levys 50 of the 100 Compra shares which it owned in consideration of the cancellation of Arncott's debt to the Levys; and (ii) the Levys, having thus acquired the 50 Compra shares from Arncott, sold them to Summit, in Aruba, in consideration of the cancellation of the Levys' debt to Summit under the loan agreement.

**Forum non conveniens**

In determining whether to dismiss a case on grounds of *forum non conveniens,* a court must consider such "private factors" as the "relative ease of access to sources of proof," the "availability of compulsory process for attendance of unwilling, and the

cost of obtaining attendance of willing witnesses," enforceability of a judgment if one is obtained, and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Although there is an "appropriateness" in trying a diversity case in a forum that is "at home with the . . . law that must govern the case," *id.* at 509, 67 S.Ct. at 843, applicability of foreign law is not in itself reason to dismiss a case on grounds of inconvenience. *See Hoffman v. Goberman*, 420 F.2d 423, 427 (3d Cir.1970); *cf. Schertenleib v. Traum*, 589 F.2d 1156, 1165 (2nd Cir.1978) (treating applicability of foreign law as only one of several factors to be considered). "[U]nless the balance [of relevant factors] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp., supra*, 330 U.S. at 508, 67 S.Ct. at 843.

In this case, of course, the present forum is not only the counterclaim plaintiff's choice of forum, but the counterclaim defendant's initial choice of forum as well. Plaintiffs chose this forum for their breach of contract claim. They now seek to dismiss only the amended counterclaim, which alleges that plaintiffs wrongfully seized Compra shares held as collateral for additional advances to Levy totaling $150,000.

Plaintiffs argue that the complaint and counterclaim involve separate, distinct, and unrelated transactions. Whether or not this is true, it has little, if anything, to do with the *forum non conveniens* analysis. The arguments relevant to that analysis are plaintiffs' contentions that the counterclaim requires application of foreign law and requires testimony of witnesses and production of documents beyond this court's power of compulsory process. Yet even under plaintiffs' version of the facts, which is disputed by Levy, plaintiffs have failed to carry their burden of demonstrating that foreign witnesses and documents relevant to plaintiffs' case are unavailable in this court or more available in some other forum.

■ While all of the events recounted by plaintiffs as bearing on the counterclaim (and those forming their claim as well) occurred outside the United States and, for the most part, in the Netherlands Antilles, there has been no showing that witnesses other than Wong and Levy will testify to the various agreements made between them. Wong has named no witnesses to those agreements, garnered either from his own recollection or from four years of discovery. Plaintiffs also claim that the corporate records of Compra and Arncott would be available in the Netherlands Antilles, but not in the United States. It is not clear either that those records are not available here or are available in the Netherlands Antilles. Arncott is incorporated in Grand Cayman, not the Netherlands Antilles, and Wong is a major shareholder. While Compra is a Netherlands Antilles corporation, there is no indication that plaintiffs have been unable to get corporate documents. In fact, from the documents submitted to the court, it appears that plaintiffs have only in the past year attempted to obtain by letters rogatory Compra corporate documents or depositions of two witnesses. Furthermore, since the claims concern Compra only by virtue of repeated transfers of its shares, it is not altogether clear why Compra's corporate documents, other than the alleged shareholders' agreement restricting transferability, are important to plaintiffs' defense of the counterclaim.

While compulsory process may be lacking, the director of Compra, Ltd. and Mr. Henry Vocks, a shareholder of Compra, have apparently agreed to give testimony before the trial court in Aruba. Furthermore, plaintiffs' claims that evidence from foreign sources are "potentially inadmissible" are not substantiated in any way.

Plaintiffs also point to Levy's claim that an agreement among the stockholders of Compra during a shareholders' meeting that Wong attended prohibited the transfer of the 50 Compra shares from the Levys to the plaintiffs. This claim, plaintiffs assert, puts into issue the following facts: (1) the existence of a shareholders' agreement concerning the Compra stock, (2) the binding

effect of such a shareholders' agreement on the parties to this suit or on Compra, (3) whether such a shareholders' agreement would have prohibited and precluded a transfer of the 50 shares of Compra stock from Arncott to Levy, and (4) whether the Compra shares were given to plaintiffs as collateral as opposed to being transferred in satisfaction of the loan.

The only factual issue listed by plaintiffs is the existence of a shareholders' agreement. While Levy has submitted the minutes of the meeting in which that agreement was purportedly made and at which Wong was present, plaintiffs have not specified the discovery they need and cannot easily obtain to refute that document, stating only in broad terms that they need "Compra and Arncott books and records, testimony of shareholders, officers and directors of Compra and Arncott and other witnesses located for the most part in the Netherlands Antilles."

The remaining issues with respect to the alleged shareholders' agreement are purely issues of law or concern the intent of the parties to this action. The applicability of foreign law alone does not call for dismissal of this action. *See Hoffman v. Goberman,* 420 F.2d 423, 427 (3d Cir.1970).

While plaintiffs point to an action now pending in the Netherlands Antilles which they claim bears directly on the issues presented in Levy's counterclaim, they have not carried their burden of demonstrating that the *forum non conveniens* factors weigh strongly in their favor. Although plaintiffs have undertaken the burdensome task of discovery by means of letters rogatory, they have not specified the information that they have been unable to obtain in four years of discovery. The dispute between plaintiffs and Compra to which plaintiffs repeatedly refer has little bearing on the specific issues presented by Levy's counterclaim. Plaintiffs do not contend that they will be unable to bring witnesses to the United States or that a judgment obtained in their favor will be unenforceable.

**Indispensable Parties**

Plaintiffs also argue for dismissal on the grounds that indispensable parties to this action cannot be joined. In their view, Compra and its shareholders are necessary parties to a determination of the existence, validity, and binding effect of a Compra shareholders' agreement. However, they have cited no case law to this effect. The threat of inconsistent judgments is present whenever two lawsuits concerning the same issues are pending simultaneously. Plaintiffs are in substance asking this court to abstain from deciding this counterclaim on the grounds that a separate proceeding, filed in 1985 and to which Levy is not a party, is going forward in the Netherlands Antilles. Plaintiffs have cited no authority justifying a dismissal of the counterclaim on those grounds.

Furthermore, this motion is brought several years too late. This action was commenced in 1983. On May 15, 1984, Levy filed his amended answer and counterclaim, raising all of the issues on which plaintiffs base their motions for dismissal. Only now, after three years of discovery, do plaintiffs suggest that Levy's counterclaim should be tried in the Netherlands Antilles instead. In addition, the threat of inconsistent rulings espoused by plaintiffs comes from a lawsuit filed by plaintiffs on July 9, 1985, almost two years ago.

Therefore, the motions to dismiss the amended counterclaim are denied.

IT IS SO ORDERED.